SCHMITZ, Appellant, v. SCHMITZ, Respondent.

*No. 27 (1974). Submitted under sec. (Rule) 251.54 September 9, 1975.—Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 657.)

For the appellant the cause was submitted on the brief of *Eugene J. Brookhouse* and *Brookhouse, Kupfer, Malinsky & Brookhouse* of Kenosha.

For the respondent the cause was submitted on the brief of *Phillips, Richards & Mayew* of Kenosha.

HANLEY, J. Two issues are presented on this appeal:

1. May the stipulation of the parties to a divorce, providing support until a child reaches twenty-one years, be enforced by an independent action or by contempt proceedings when an act of the legislature reduces the age of majority to eighteen years?

2. Does ch. 213, Laws of 1971, which reduces the age of majority, relieve the respondent of his obligation under the divorce judgment to contribute child support until the children reach twenty-one years of age?

*Stipulation.*

Because the trial court rejected the appellant's theory that ch. 213, Stats., had no effect on the prior divorce judgment, she has stressed an alternative theory based on the predivorce stipulation.

Starting with the premise that a "stipulation in a divorce action, which is incorporated verbatim in the judgment, is in the nature of a contract," the appellant cites rules of construction in support of her contention that the parties intended child support until age twenty-one. The authority cited for the initial premise, however, was misconstrued. *Estate of Boyd* (1963), 18 Wis. 2d 379, 381, 118 N. W. 2d 705, and *Schmidt v. Schmidt* (1968), 40 Wis. 2d 649, 653, 162 N. W. 2d 618, contain

the above-quoted statement but without language about incorporation in the judgment. *Schmidt* dealt with a factual stipulation of property value, and its validity rested mainly on the trial stipulation statute, sec. 269.46 (2), Stats. 1969. *Boyd* did use the language in reference to a property settlement incorporated in the judgment, and proceeded to apply the contract rules of interpretation. This exercise was not fully warranted under the original source for the proposition that a stipulation is in the nature of a contract, *Miner v. Miner* (1960), 10 Wis. 2d 438, 444, 103 N. W. 2d 4.

*Miner* was not concerned with factual stipulations, nor with stipulations between the parties that are proposed and accepted in the final judgment. The contractual situation is rarer (pp. 443, 444) :

". . . [T]here may be situations in which the parties enter into a formal contract or written agreement outside of court in which they finally settle all their financial rights and duties toward each other in contemplation of the uncertainties of the future. Sec. 247.10, Stats. . . . requires only that a contract or stipulation be approved by the court; . . . When the court merely refers to such an agreement and approves it without making the provisions thereof a part of its judgment, the weight of authority is that such an agreement is not subject to modification by the court even though the circumstances of the parties change. The arrangement is contractual, not a judicial determination, and therefore no more subject to change by the court than the terms of any other private agreement." (Citations omitted.)

Such acquiescence by the divorce court is a practice not to be encouraged. If the stipulation is inadequate or overreaching, the court would undoubtedly provide its own equitable provisions in the decree. Even if the agreement does meet with the court's approval, however, it should be incorporated in the decree so that the court may assert society's interest in the protection of children and unsupported parties when changes in circumstances

arise. The stipulation here was so incorporated and thus merged with the decree.

As stated in *Miner* and reaffirmed in *Ray v. Ray* (1973), 57 Wis. 2d 77, 84, 203 N. W. 2d 724:

" 'The court has the same serious duty to examine carefully such agreements or stipulations against the background of full information of the economic status and resources of the parties as it has in making a determination without the aid of such an agreement. . . . There is no such thing in this state as a divorce by consent or agreement. The parties cannot by stipulation proscribe, modify, or oust the court of its power to determine the disposition of property, alimony, support, custody, or other matters involved in a divorce proceeding. When a court follows and adopts an agreement of the parties making it a part of its judgment, the court does so on its own responsibility, and the provisions become its own judgment.' "

Appellant's reliance on a contract theory as to the stipulation apparently was founded on cases from other jurisdictions which accepted such arguments to defeat the asserted application of new age for majority laws. However, reliance on this theory was aptly forsaken by counsel for appellant at the oral argument.

An argument that is somewhat analogous, especially as it also concerns interpretation of the stipulation, was asserted on the strength of *Bliwas v. Bliwas* (1970), 47 Wis. 2d 635, 638, 639, 178 N. W. 2d 35. In again rejecting the contract notion of the stipulation, the *Bliwas* court held that the stipulation could be a basis for estopping the parties, through the contempt power, from violating decree provisions provided by the stipulation but beyond the power of the court to implement on its own initiative. Enforcement of such an order (p. 640):

". . . rests not so much in the enforcement of a contractual obligation or even extension of jurisdiction of the court, as it does in recognizing that a person who agrees that something be included in a family court

order, especially where he receives a benefit for so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do."

In *Bliwas,* the divorce judgment was amended to include a later stipulation of the parties. The defendant husband agreed to furnish educational expenses that would continue to accrue for his son after the age of majority, in return for a reduction in support payments while the son attended school during his minority. Clearly the elements of equitable estoppel, as set forth in *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 266, 138 N. W. 2d 238, were present: "'action . . . on the part of the one against whom the estoppel is asserted [proposal to forego current support payments in exchange for future educational payments] which induces reliance thereon by another, either in the form of action or nonaction [acceptance of proposal and lack of current payments] to his detriment [loss of such timely payments.]'" A more concise rationale for this same holding is the well-understood rule that estoppel by election applies to any stipulation in the course of judicial proceedings. 31 C. J. S., *Estoppel,* p. 638, sec. 120. Although the theory is more precisely applied to factual stipulations, predivorce agreements accepted by the family court embody findings and conclusions as to the best interests of the parties under the facts then existing. *Miner, supra,* at 442, 443.

Stipulations in court may not be a basis for estoppel when inadvertence or mistake is involved. 31 C. J. S., *supra.* Equitable estoppel itself requires that the estopped party have knowledge of the facts on the conduct relating to the estoppel. Unlike the defendant in *Bliwas* who knowingly waived his right not to pay support beyond his son's majority, the respondent here did not choose to pay child support till age twenty-one as a bargained alternative to lesser periods of support. The stipulation here is a routine divorce stipulation. The existing law

required that such payment be made. Estoppel in *Bliwas* and its concomitant extension of the contempt power because of the intentional waiver of the limits of the reach of the family court should not be applicable to the jurisdiction gap created here by the subsequent act of the legislature.

*Judgment.*

The decree of the trial court contained the same language on child support that was proposed by the stipulation. In the trial court, the appellant sought to enforce its literal requirement.

In refusing to order further payments, the trial court noted that the phrase "minor children" was the crucial language of the decree, and that the twenty-one age reference was merely descriptive of the then existing majority status. A new majority status being defined by ch. 213, Laws of 1971, the court noted that the decree's application ceased for those children who attain or attained eighteen years.

To uphold the validity of the decree in the face of the apparent loss of jurisdiction occasioned by ch. 213, Laws of 1971, it must be established that the act applies retroactively to the detriment of vested rights.

To the extent that the new act does not demand the return of payments made for the parties' children who were over age eighteen prior to the effective date of the law, retroactive application is clearly avoided. *Jungjohann v. Jungjohann* (1973), 213 Kan. 329, 516 Pac. 2d 904.

Appellant strongly argues that there is a vested right to the child support payments. This vested nature is seen as not impaired merely because it can be modified or terminated by the courts. The contention is made that support orders may be changed only by the court under certain restricted circumstances, not by the legislature through its determination that the child over eighteen should support himself.

To call child support payments a vested right misconceives their nature. Implicit in the decisional law describing payment modification as allowed only when circumstances of the parties undergo change is the underlying requirement that a current legal obligation exists.

In *Vicino v. Vicino* (1972), 30 Conn. Supp. 49, 298 Atl. 2d 241, it was correctly acknowledged that the existence of the basic legal obligation, not its embodiment in a decree in terms of certain support for a specified date, is the crucial issue. This obligation is regulated by the legislature directly through its grant of the power to order support during infancy, sec. 247.24, Stats., and indirectly through its establishment of the period of infancy. 42 Am. Jur. 2d, *Infants*, pp. 8, 9, sec. 1; *Jungjohann, supra,* 516 Pac. 2d at 907. The lawmakers who have the power to "blow the breath of life into" a right also may snuff it out. *Koshkonong Mud Creek Drainage District v. Bodeman* (1928), 197 Wis. 261, 221 N. W. 864, appeal dismissed and certiorari denied, 280 U. S. 527, 50 Sup. Ct. 87, 74 L. Ed. 594. This view is reflected in those decisions which note that minority is not a vested right. It is a status, modifiable by law, which has no vested property rights. *Ruhsam v. Ruhsam* (1974), 110 Ariz. 326, 518 Pac. 2d 576; *In re Trust Under Will of Davidson* (1947), 223 Minn. 268, 26 N. W. 2d 223. The interest of society, frequently expressed as a justification for the grant of continuing control by the family court, has been articulated by the legislature in conferring adulthood at age eighteen. The legal parental obligations are thus also terminated. In regards to any child having a "vested" right to support, we think that the family court lacks the inherent power both to order child support in favor of eighteen-year-old adults in the future and to likewise enforce this nonexistent obligation on parties who obtained their divorce prior to the law.

The cases of *Irby v. Martin* (Okla. 1972), 500 Pac. 2d 278; *Rosher v. Superior Court* (1937), 9 Cal. 2d 556, 71 Pac. 2d 918; and *State v. Kiessenbeck* (1941), 167

Ore. 25, 114 Pac. 2d 147, in enforcing child support under a law lengthening minority status as against a decree embodying a lesser period, tacitly recognize that the legal obligation, not its expression in an order, is to be followed. This result may also obtain under the principle that decrees of child support are modifiable by a change of circumstance. A legislative declaration of adulthood, carrying the complementary release of support obligations, is the clearest change of condition. *Shoaf v. Shoaf* (1972), 282 N. C. 287, 192 S. E. 2d 299 at 303; *Ruhsam*, 21 Ariz. App. 101, 515 Pac. 2d 1199. Although appellant would contend that this legislative determination does not equate with the child's actual ability to support himself as a change in circumstances, this inability was no more a basis for support beyond age twenty-one in the past than it is now for support beyond age eighteen. Parental support in majority is a concept accepted elsewhere but not in Wisconsin. *Bliwas, supra*, at 638.

We conclude that by virtue of ch. 213, Laws of 1971, the children in question were declared adults. The respondent's rights as a parent were terminated. The children in effect were emancipated and the respondent's legal obligation to pay support under the divorce judgment was terminated. This conclusion would follow irrespective of the form of the language used in the decree. *See: Miller v. Miller* (1975), 67 Wis. 2d 435, 227 N. W. 2d 626, with *Waymire v. Waymire* (1973), 10 Wash. App. 262, 517 Pac. 2d 219, 221.

*By the Court.*—Order affirmed.