Dorothy E. POEHNELT, Plaintiff-Respondent, v. Matthew H. POEHNELT, Defendant-Appellant.

Supreme Court

*No. 77–302. Submitted on briefs February 7, 1980.—Decided March 4, 1980.*
(Also reported in 289 N.W.2d 296.)

For the appellant the cause was submitted on the briefs of *Richard Bolte Law Offices* of Wausau.

For the respondent the cause was submitted on the brief of *Nikolay, Jensen & Scott* of Abbotsford.

COFFEY, J. This case involves an appeal from an order of the circuit court amending a divorce judgment and increasing the monthly child support payments.

Dorothy Poehnelt, the plaintiff-respondent, and Matthew Poehnelt, the defendant-appellant, obtained a divorce on September 24, 1973, pursuant to a written stipulation.[1] The stipulation provided for a division of

[1] The stipulation in part reads as follows:

"1. . . .

"2. . . .

"3. That the Defendant's obligation of support is established at $70 per month per child. Because the Plaintiff will be awarded the great bulk of the property of the parties, specifically the farm and all the personal property belonging thereto, subject to a mortgage in favor of the Defendant, this support obligation shall be satisfied by reducing the amount due to the Defendant by the amount of said support obligation after giving said Defendant credit for interest on the mortgage balance at the rate of eight percent (8%) per annum. A schedule to this effect which was computed to reflect the dates upon which the respective children will reach age 18 is attached hereto as Exhibit A. This method of deducting the indicated amounts from the principal balance due on the mortgage shall in all respects satisfy the Defendant's obligation of support.

the marital estate and assets in lieu of alimony and also payment of child support for the seven minor children. The plaintiff-wife was to receive the family farm valued at $40,000 and assume an $1,800 mortgage debt thereon, as well as the farm machinery, milking equipment and cattle valued at $34,555. The defendant-husband, on the other hand, was awarded a truck valued at $3,000, an automobile valued at $2,300, a check for $5,200 and also the plaintiff was directed to execute a $30,000 mortgage lien on the farm property in favor of the defendant. The lien was to be due and payable in ten (10) years from

"4. The Plaintiff shall receive no alimony, but in lieu thereof shall be entitled to a division of the property of the parties. The property of the parties at the time of this divorce is as listed in the appraisal made by L. C. Christensen & Company, a mutually acceptable appraiser, plus a check for $5,200 in the possession of the Defendant, and an automobile valued at $2,300 in the possession of the Plaintiff. The total value of the property of the parties is estimated to be $85,000. It is the intent and purpose of this property division to split that value between the two parties. In order to effectuate the same, it is intended that the Defendant will receive the check for $5,200, the truck worth $3,000, and the automobile worth $2,300. The Plaintiff shall receive the farm and all the personal property listed in the appraisal. She shall further be obligated to pay all mortgages against said property and to assume and pay the obligation of $1,800 with the Dorchester State Bank. The real property received by the Plaintiff shall be impressed with a mortgage lien to the Defendant in the original sum of $30,000. This mortgage lien shall bear interest at the rate of 8% per annum, said interest to be credited to the Defendant as a portion of the obligation of support found in Exhibit A attached hereto. The principal obligation shall be reduced by the credits for support also found in said schedule. It is further to be provided that this obligation shall be paid in full to the Defendant at the expiration of ten (10) years, but that if the Plaintiff should remarry, the balance at that time shall be due and payable in full. The Plaintiff shall execute a mortgage to the Defendant to effectuate the above. The appraisal is attached as Exhibit B.

"5. . . .

"6. . . ."

the date of divorce or at the time of sale of the property by the plaintiff if the sale occurred before the expiration of the ten year period.

In addition, the plaintiff-wife was granted custody and control of the minor children and the defendant was required to pay $70 per month for each of the seven minor children, until they reach the age of majority. However, the defendant-husband was not required to make actual monthly cash payments to the plaintiff, but rather the child support obligation would be satisfied by granting him a monthly credit against interest and/or principal of the $30,000 mortgage lien recited in the property settlement and thus reducing the amount due. A schedule[2] reflecting these reductions in the mortgage principal was prepared, based on the dates of the children's birthdays, as set out in the respondent's complaint for divorce.

Approximately four years later, following the sale of the farm property, the plaintiff obtained an order to show cause requesting an increase in child support payments. In her affidavit in support of the order to show cause she alleged the following:

1. That she obtained a divorce judgment including child support payments;

2. that at the time of the divorce judgment, September 24, 1973, the respondent was residing on a farm

[2] The schedule provided as follows:

| "Date | Balance on Mortgage |
| --- | --- |
| October 1, 1973 | $30,000.00 |
| January 1, 1976 | 25,800.00 |
| December 1, 1976 | 23,182.00 |
| June 1, 1978 | 19,843.00 |
| June 1, 1979 | 18,910.00 |
| December 1, 1980 | 18,672.00 |
| March 1, 1983* | 20,368.00 |

*This balance is to bear interest at the rate of eight percent (8%) per annum until the property is actually sold or the obligation otherwise satisfied."

and thus had the benefit of farm produce to help support the minor children;[3]

3. that she was now temporarily leasing and operating a coffee shop without profit and did not anticipate any income from another source in 1977.

Based on a change in circumstances, she requested an increase in the support payments for the three remaining minor children and that the balance due the defendant on the prior mortgage debt, by virtue of the sale of the farm, be held in escrow to secure the future payment of support.

At the time of the hearing on the order to show cause, the plaintiff-wife tendered approximately $21,000 (the remaining principal of the mortgage due the defendant pursuant to the property settlement) to the defendant's attorney. In turn, she received a quit claim deed from the defendant in satisfaction of the balance of the mortgage lien. It was established at the hearing on the order to show cause[4] that the birthdates of the children, as listed in the original divorce complaint, were understated and in error, this resulting in the defendant overpaying his support obligation in the amount of $2,800. While the trial court acknowledged the overpayment, nevertheless the presiding judge refused to give the defendant-husband credit for the overpayment.

At the hearing on the order to show cause the court found:

1. that there was a 35% to 40% increase in the cost of living in the 4½ years since the divorce judgment was entered;

2. that the plaintiff had approximately $800 of expenses per month (including utilities, clothing, food, hospitalization insurance and school lunches);

3. that her income from investments and wages was only $350 per month;

---

[3] The farm was sold for $125,000 on June 10, 1977.

[4] The briefs do not reflect whether it was before or after the $21,000 was tendered and the quit claim deed was executed.

4. that the plaintiff's monthly expenses were increased because of the fact that a non-minor child was living with her while recuperating from an operation.

5. the defendant's income had remained substantially the same since the divorce (approximately $10,000–$11,000 a year).

Following the hearing, the court modified that portion of the judgment providing for child support and ordered the appellant to pay $300 per month towards the support of the three remaining minor children, (thus in effect increasing the support payment sum $30 per month per child). The court further ordered that this sum was to be reduced by $50 per month as each child reached the age of majority, thus the court order support payments would only be $200 per month for the *last* remaining minor child. The court granted the plaintiff's motion for security as to future child support payments and ordered the $10,000 received in satisfaction of the $30,-000 mortgage lien held in trust. From this order amending the divorce judgment the defendant-husband appeals.

*Issues*

1. Did the court err in increasing the child support payments and ordering the respondent to place $10,000 in trust as security to ensure the payment of the future child support?

2. Did the court err in refusing to give the defendant credit for the $2,800 overpayment in child support?

*Amendment of Support Obligation*

The defendant-husband does not dispute the authority of the court to modify or revise a judgment or support award as provided in sec. 247.25[5] and sec. 247.32,[6] Stats.

[5] "247.25 **Child support.** (1) Upon every judgment of annulment, divorce or legal separation, on in rendering a judgment in an action under s. 247.02(1)(f) or (j) or 247.08, the court may order either or both parents to pay an amount reasonable or

1975.[7] *See also: Krause v. Krause,* 58 Wis.2d 499, 508–09, 206 N.W.2d 589 (1973), and *Monson v. Monson,* 85 Wis.2d 794, 271 N.W.2d 137 (Ct. App. 1978). However, the burden of proof to show that the modification of a divorce judgment is justified is on the party seeking to alter the provisions of the prior judgment. *Krause v. Krause, supra.*

necessary for support of a child and shall specifically assign responsibility for payment of medical expenses, after considering:

"(b) The financial resources of both parents as determined under s. 247.255.

"(c) . . .

"(d) . . .

"(e) . . .

"(f) . . .

"(g) . . .

"(h) . . .

"(i) Such other factors as the court may in each individual case determine to be relevant.

"(2) The court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children.

"(3) . . ."

6 "247.32 **Revision of judgment.** After a judgment providing for alimony or other allowance for a spouse and children, or either of them, or for the appointment of trustees as aforesaid the court may, from time to time, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment respecting any of the said matters which such court might have made in the original action, except that a judgment which either fails to provide alimony for either party or provides alimony for either party for a limited period only under s. 247.26 shall not thereafter be revised or altered in either respect nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification."

7 The Divorce Reform Act of 1977 did not take effect until after the proceedings in the lower court; hence, this case is governed by the prior law. Unless otherwise indicated, all citations to ch. 247 are citations to the prior divorce law. (1975).

In *Krause v. Krause, supra,* this court held that a court may modify the provisions of a judgment of divorce relating to support money, only when there has been a substantial change in the circumstances of the parties or children and the modification ". . . would be in the best interests of the children."[8] *Id.* at 509; *Kritzik v. Kritzik,* 21 Wis.2d 442, 448, 124 N.W.2d 581 (1963). The defendant thus contends that the court abused its discretion in increasing the amount of child support without a sufficient showing of a change in circumstances.

The court's decision to increase the child support payments was based on its finding that there had been a substantial increase in the cost of living (35 to 40%) in the 4 years since the date of the divorce and that the husband-appellant was able to pay the increase in support, the court said:

"I do feel that the Court can find as a fact that there has been a change in circumstances in terms of inflation alone. Now, you can say what you want, but the cost of living has gone up about 35 to 40 percent in four years. I think, based on this gentleman's income, that

[8] "The showing of a change of circumstances required in order to modify support-money or custody provisions of a divorce judgment is not jurisdictional but a rule of policy. Policy dictates that when a court has made a determination in this field on a certain state of facts it should be given the effect of *res judicata* so long as the factual situation has not materially changed. Cf. *Miner v. Miner* (1960), 10 Wis. (2d) 438, 441, 103 N.W. (2d) 4. This rule discourages the making of groundless requests for modification as well as the attempting to obtain a more-favorable ruling by bringing the petition before different judges. It also prevents a different judge new to the case from modifying the former judgment or order so as to substitute his own view of the matter. *Since the welfare of the affected child, or children, is the primary objective to be considered, the change-of-circumstances rule should not be so restrictively applied as to defeat this objective.*" (Emphasis supplied.) *Chandler v. Chandler,* 25 Wis.2d 587, 592–93, 131 N.W.2d 336 (1964).

"$70.00 a month is not sufficient support money in terms of inflation. Taking into account a 40 percent increase in the cost of living, I think that for the Court to order $300.00 for the three children would not be unfair to either side here, and that's what the court will order him to pay, based on the inflation rate."

Based on its findings that the 35 to 40% increase in the cost of living constitutes a substantial change in circumstances the court therefore modified the divorce judgment.

On appeal this court has developed two tests for reviewing a trial court's modification of a divorce judgment:

"Where the modification rests entirely on a factual determination the test is whether that determination is contrary to the great weight of the evidence. Where the modification rests primarily on an exercise of discretion the test is whether there was an abuse of discretion by the trial court." *Thies v. MacDonald,* 51 Wis.2d 296, 303-04, 187 N.W.2d 186 (1971).

The trial court's modification of the support obligation, allowing an increase in the monthly support payments of $30 per minor child to account for a 35 to 40% increase in the cost of living, involves an exercise of discretion on the part of the trial court. Thus the test to be applied on review is whether the trial court *abused its discretion* in finding that a 35 to 40% increase in the cost of living constitutes a sufficient material change in circumstances justifying a proportional modification of the amount of child support to be paid by the appellant.

In *Dittberner v. Dittberner,* 54 Wis.2d 671, 196 N.W. 2d 643 (1972), a case involving a modification of a divorce judgment, this court stated that proper discretion is exercised where the trial court has considered the combined needs of the wife or children and the hus-

band's ability to pay. It was held in *Anderson v. Anderson*, 72 Wis.2d 631, 242 N.W.2d 165 (1976), that an abuse of discretion may arise when there is a failure to consider all of the relevant facts and principles of law applicable to a particular situation or where, under the circumstances, the award is considered excessive or inadequate. Moreover, this court has held that any modification of child support, in the absence of a material change in the premise (circumstances) on which the original determination was made, constitutes an abuse of discretion. *Severson v. Severson*, 71 Wis.2d 382, 238 N.W.2d 116 (1976).

An increase in the cost of living is among the relevant factors to be considered when determining whether there is a material change in circumstances. In *Miller v. Miller*, 67 Wis.2d 435, 227 N.W.2d 626 (1975), this court stated:

> "The aging of the children, *the increased cost of living*, the ability of the noncustodial parent to pay, the marital status of the parents, and the financial status of the parents and their spouses, are among the relevant factors to be considered in determining whether a material change in the circumstances has occurred." *Id.* at 443. (Emphasis supplied.)

It should be noted that under the new divorce statutes, sec. 247.32(1), Stats. 1977, "a substantial change in the cost of living by either party or as measured by the Federal Bureau of Labor Statistics may be sufficient to justify a revision of judgment." Therefore, it is clear that a substantial rise in the cost of living is a relevant factor to be considered by the court when determining whether there has been a substantial change in circumstances requiring modification of that provision in the judgment dealing with child support. In fact, this court on a number of occasions has held that the trial court

did not abuse its discretion when increasing the amount of child support to be paid where it found a rise in the cost of living, along with a number of other factors. In *Foregger v. Foregger,* 48 Wis.2d 512, 180 N.W.2d 578 (1970), this court held that the trial court did not abuse its discretion in increasing the child support obligation where there was *a rise in the cost of living* as well as a shift in the financial responsibility and the custodial parent was now in part responsible for taxes, insurance and the maintenance of the home. As a result of the shift in financial responsibility, the noncustodial parent was financially able to absorb the increase in child support. In *Setzer v. Setzer,* 251 Wis. 234, 29 N.W.2d 62 (1947), this court reasoned there was no abuse of discretion on the part of the trial court in increasing the child support where there was an increase in the age of the children, *a sharp increase in the cost of living,* or a change in the custodial parent's financial position and/or a showing that the noncustodial parent could financially absorb the increase.

The circumstances found in this case are similar to those recited in the *Setzer* case. The court's findings in this case establish:

1. an increase in the age of the children since the time of the divorce;

2. a sharp increase (35 to 40% as recited in the record) in the cost of living in the four years since the divorce;

3. that the plaintiff-wife's testimony, contrary to the contents of her affidavit in support of the order to show cause, demonstrated to the satisfaction of the court that even though she now earned $200 to $250 from the coffee shop the court found her earnings to be inadequate, when combined with her other income, to support the children. Moreover, since the sale of the farm, the family no longer have the benefit of the farm produce to feed

the children. Thus, there has been a change in the custodial parent's (plaintiff) financial position; and

4. that the $30 per month/per child increase in child support in fact would require the defendant to pay less in total child support ($300 for three children), than he was formerly paying ($490 for seven children). Furthermore, the trial court made a finding that the defendant-husband was financially able to meet the increased child support payments.[9] It should be noted that the defendant's income had remained substantially the same since the date of the divorce and also that he would be receiving $11,000 in satisfaction of the mortgage lien.

Therefore, we hold that the court's finding that a 35 to 40% increase in the cost of living since the entry of the original child support decree was a substantial change in circumstances and thus, the trial court did not abuse its discretion when modifying the child support order.

*Requirement of Security for Future Support Payments*

The appellant next contends that the trial court's order to deposit $10,000 of the $21,000 paid to him in satisfaction of his mortgage lien in trust as security for the future payment of child support, was in effect amending a property division and therefore the court exceeded its jurisdiction in amending the property division. *See:* sec. 247.32, Stats. 1975.[10] We find this contention to be without merit as the court did not change the intent of the original divorce decree or require the appellant to

---

[9] In *Kritzik v. Kritzik, supra,* this court held that: "It is not necessary for the party seeking the change in the support payment to demonstrate that the husband's ability to pay has substantially increased. It is sufficient to demonstrate that the husband in his present economic position can absorb the increased expenditure." *Id.* at 447–48. Reaffirmed in *Klipstein v. Klipstein,* 47 Wis.2d 314, 318, 177 N.W.2d 57 (1970).

[10] *See:* fn. 6.

reconvey property previously granted to him pursuant to the divorce judgment, but only required the appellant to "put up" money as security for the future payment of his support obligations. In its decision, the court stated:

"Now, the third point is whether or not any money should be sequestered for the benefit of these children. I don't think I'd necessarily be doing a disservice to the defendant [Matthew Poehnelt] by requiring him to put up some money. I'm not saying that he can't have the interest and earnings off of it, but I'm going to order that [$]10,000 of the [$]21,000 be placed in trust."

Sec. 247.30, Stats. 1975,[11] authorizes trial courts to require that sufficient security be provided to insure the full payment of support orders for minor children according to the judgment of divorce. *See also: Caldwell v. Caldwell,* 5 Wis.2d 146, 92 N.W.2d 356 (1958). Moreover, a trial court is empowered, if necessary, to modify the provision for security at any time. *See: Beck v. First National Bank in Oshkosh,* 244 Wis. 418, 12 N.W. 2d 665 (1944). Thus, in view of the above statute, case law and the fact that the defendant had been unable to accumulate any savings, combined with his past arrear-

---

[11] "247.30 **Alimony, payment of and security for.** In all cases where alimony or other allowance shall be adjudged to either party or for the support or education of the children the court may provide that the same shall be paid in such sums and at such times as shall be deemed expedient, and may impose the same as a charge upon any specific real estate of the party liable or may require sufficient security to be given for payment according to the judgment; and upon neglect or refusal to give such security or upon the failure to pay such alimony or allowance the court may enforce the payment thereof by execution or under s. 295.02 or otherwise as in other cases. No such judgment shall become effectual as a charge upon specific real estate until the judgment or a certified copy thereof is recorded in the office of the register of deeds in the county in which the real estate is situated."

age in temporary child support, the trial court was authorized to require the appellant to provide sufficient security to insure future payment of support.

This court has stated that the matter of ordering security for child support is a question to be determined by the trial court in the exercise of its inherent discretionary powers. *Caldwell v. Caldwell, supra.* In *Caldwell,* the parent obligated to pay support gave the court grounds to suspect that he might fail to accept his obligation of child support payments and thus the court found it to be a proper case ". . . in which to require the husband to give security for the support of the minor child." *Id.* at 164. On appeal, our concern in this case is whether the trial court could conclude from the appellant's past performance in the payment of support that he could not be relied on to keep up his obligation until some legal force was exerted on him. *Foregger, supra.* The policy supporting the requirement of security is to insure the timely payment of support obligations without the necessity of resorting to contempt proceedings. *Id.* In this case, there was evidence that the defendant had been in arrears in his temporary support payments pending the final adjudication of the divorce action.[12] Therefore, we hold that, based on the defendant's history of arrearage in the payment of temporary child support and his inability to accumulate any savings, the trial court did not abuse its discretion in requiring the appellant to provide security for the payment of the modified child support obligation.

---

[12] Following the divorce, the defendant's support obligation was automatically deducted from the interest and principal of the $30,000 mortgage lien the defendant held in the farm and payable by the plaintiff, and thus should not be considered in the husband's past performance with regard to payment of child support.

*Credit for Overpayment of Child Support*

Lastly, the defendant contends that the trial court erred in failing to give him credit for the $2,800 excess child support payments made in reliance on the understated birthdates of the children listed in the complaint for divorce. In refusing to give the appellant credit for the $2,800 overpayment the court stated:

"Now, I have given this some thought . . . , and I think there are several points I have to speak on. Obviously there has been an error made in the computations. *As I have already indicated, I'm a little unsympathetic with a rule that the father doesn't have to support these children when they are in high school, even when they are 18 years of age.* Since it was a mutual mistake, and voluntarily made by both sides, it seems to me that that twenty-eight hundred dollars the court can ignore. Let's call it the amount that it might cost to support these two children during the next year, if you want an explanation. At least that's the reason the Court is going to call it a mutual mistake, and not credit the defendant with that." (Emphasis supplied.)

The court, in explaining its decision in terms of an additional support award for the benefit of the two children in high school, said "the amount that it might cost to support these two [adult] children during the next year," it is clear that the court's ruling fails to give credence to the rule that in the absence of a known stipulation to the contrary, a court cannot order the payment of support for children beyond the age of majority. *Miller v. Miller, supra. O'Neill v. O'Neill,* 17 Wis.2d 406, 117 N.W.2d 267 (1962). The provision for continued support for a child who has reached the age of majority in a divorce judgment, or any modification thereof, is extra judicial and a nullity. *O'Neill v. O'Neill, supra.* In *Bliwas v. Bliwas,* 47 Wis.2d 635, 178 N.W.2d 35 (1970), this court recognized that this rule may be harsh

with regard to handicapped offspring or unrealistically applied to the expenses incurred in secondary education, but, nevertheless, we have held that it is the responsibility of the legislature and not the courts to change or amend this rule. Thus, it was error for the trial court to treat the $2,800 overpayment as support for two non-minor children, even though they were still in high school, as the court was without authority to order payment of support beyond the age of majority (18).

In its decision, the trial court also suggested that the defendant was prohibited and barred from receiving credit for the overpayment because of his *mistake* in originally stipulating to the children's birthdays (later found to be inaccurate). In *Schmitz v. Schmitz,* 70 Wis. 2d 882, 888, 230 N.W.2d 657, 661 (1975), this court held that "[s]tipulations in court may *not* be a basis for estoppel when inadvertence or *mistake* is involved. 31 C.J.S., *supra.* Equitable estoppel itself requires that the estopped party have knowledge of the facts on the conduct relating to the estoppel." (Emphasis supplied.) Clearly, in this case the defendant-husband unknowingly made a mistake in paying more support than legally required based on the mistaken birthdates of the children listed in the divorce complaint.

In *Anderson v. Anderson,* 82 Wis.2d 115, 261 N.W.2d 817 (1978), this court cited with approval the New York case of *Coppo v. Coppo,* 140 N.Y.S.2d 603 (N.Y. Supp. 1955), which characterized the receipt of support by a divorced parent after a child had attained majority as unjust enrichment and held that the trial court should have allowed an offset of child support overpayments against alimony arrearage. *See also: Foregger v. Foregger,* 40 Wis.2d 632, 162 N.W.2d 553, 164 N.W.2d 226 (1968) ; *Chandler v. Chandler,* 25 Wis.2d 587, 131 N.W.2d

336 (1964). Therefore, we hold that the defendant is entitled to an offset or credit for the $2,800 overpayment of child support made to the plaintiff and thus that portion of the court's order is modified, consistent with this opinion, and affirmed as modified.

*By the Court.*—Order modified and, as modified, affirmed without costs.