IN RE the MARRIAGE OF: Helen RESONG, f/k/a
Helen Vier, Petitioner-Appellant,

v.

Clark VIER, Respondent. [Case No. 90–0075.]

STATE of Wisconsin EX REL. Helen VIER, Peti-
tioner-Appellant,

v.

Clark VIER, Defendant-Respondent. [Case No.
90–0076.]

Court of Appeals

*Nos. 90–0075, 90–0076. Submitted on briefs May 29,
1990.—Decided July 10, 1990.*

(Also reported in 459 N.W.2d 591.)

383

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Phillip Todryk* of Hudson.

On behalf of the respondent, the cause was submitted on the brief of *Robert L. Loberg* of Ellsworth.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Helen Resong, formerly Helen Vier, appeals an order requiring a portion of her ex-husband Clark Vier's child support payments and arrearages to be placed in trust for their daughter Stephanie's post-high school education.[1] Helen contends that the order was an abuse of discretion because the trial court: (1) cannot consider post-minority educational expenses when set-

---

[1] Although the divorce and support enforcement cases were not consolidated at the trial court level, the same order was entered in each.

ting child support; (2) did not apply the proper standard for alteration of child support orders; and (3) failed to make adequate factual findings in support of its decision. We hold that it was error for the trial court to consider Stephanie's future expenses as an adult in setting current child support. Therefore, we reverse the order and remand the matter to the trial court for further proceedings.

Helen and Clark were married in 1962 and divorced in 1986. They have five children, three of whom were still minors at the time of the divorce. Helen's gross income was approximately $250 per month and Clark's $2,250 per month, along with additional income from commissions.

Clark failed to remain current in his support payments, and Helen commenced an action against him to collect, as well as to resolve some other disputes such as Clark's responsibility to carry health insurance coverage and the disposition of the income tax credit. By that time, Stephanie was the only child who was still a minor. Clark's income had increased to approximately $5,000 per month, and he moved to reduce his child support obligation from seventeen percent of his gross income to a similar percentage of his salary or, in the alternative, to place some portion of the support into trust for Stephanie's post-high school education. Clark also expressed concern that Helen was using support money to finance her horse farm, which was, at best, a break-even proposition financially.

The trial court found nothing in the record to indicate that the previously ordered payments of approximately $900 a month were necessary for Stephanie's support. However, the court declined to reduce Clark's support obligation below seventeen percent of his gross income. Instead, the court ordered all monthly payments

in excess of $600 placed in a trust fund for Stephanie's college education. The trial court also ordered payment of the $6,078.94 in arrearages, $1,500 of which were to be placed in the educational trust. The court made no factual findings that Helen was misusing any of the support money she received. Helen appealed the order and raises only one issue: whether ordering payment of a portion of the child support proceeds to a trust was improper.

The parties' posture in this case are somewhat unusual. Helen, the custodial parent, is appealing and advancing the argument that it was improper for the court to consider Stephanie's post-high school educational needs in setting support. Nonetheless, Helen does have standing to contest the trial court's order as its effect was to reduce Clark's support payments from seventeen percent of his gross income (approximately $900 per month) to $600 per month with the remainder going into the trust fund. *Cf. Mutual Serv. Cas. Ins. Co. v. Koenigs,* 110 Wis. 2d 522, 526, 329 N.W.2d 157, 159 (1983) (parties aggrieved by judgment have standing to appeal).

The first question we must address is whether it is ever appropriate for a court to consider expenses incurred after the age of majority in setting current support. Section 767.25, Stats., provides in part:

> **Child support. (1)** Whenever the court . . . enters a judgment of . . . divorce . . . the court shall order either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child. The support amount may be expressed as a percentage of parental income or as a fixed sum.
>
> *(1j)* Except as provided in sub. (1m), the court shall determine child support payments by using the

percentage standard established by the department of health and social services under s. 46.25(9)(a).

*(1m)* Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:

. . ..

(c) The standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

. . ..

(g) The child's educational needs.

. . ..

(hm) The best interests of the child.

(i) Any other factors which the court in each case determines are relevant.

Here, the trial court did not deviate from the percentage standard expressed in Wis. Adm. Code sec. HSS 80.03 (Aug. 1987). However, adhering to the percentage standard does not totally insulate the trial court from appellate review.

■

A determination of child support is committed to the sound discretion of the trial court. *Thibadeau v. Thibadeau,* 150 Wis. 2d 109, 114–15, 441 N.W.2d 281, 283 (Ct. App. 1989). Discretion contemplates a reasoned application of the law to the facts of the case. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). Failure to apply the correct law is an abuse of discretion. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968). Here, the trial court abused its discretion by considering impermissible factors in set-

ting child support.[2]

The trial court in this case did not end its inquiry at establishing the correct percentage to be paid under sec. 767.25(1j), Stats. Instead, at the parties' request, the court went on to consider the factors enumerated under sec. 767.25(1m). The court eventually reached the conclusion that these factors did not justify altering the percentage standard. But, if in examining the sec. 767.25(1m) factors, the court made an error of law, the award may still be an abuse of discretion. Had the trial court correctly applied the subsec. (1m) factors, it may have decided that deviation from the percentage standard was appropriate.

It was error for the trial court to consider Stephanie's post-high school educational expenses in setting child support.[3] On the surface, weighing this factor did not directly conflict with the language of sec. 767.25(1m), Stats., which allows consideration of, among other things, the child's educational needs, her best interests and any other factors the trial court deems relevant.[4] The language does not specifically limit the

---

[2]Helen also argues that the trial court erred by modifying the support order when no showing had been made of a substantial or material change in the circumstances of the parties or children. *See Burger v. Burger,* 144 Wis. 2d 514, 523–24, 424 N.W.2d 691, 695 (1988). We hold that the increase in Clark's income from $2,250 per month to approximately $5,000 per month was a sufficient change to potentially warrant modification of the order.

[3]When the age of majority was twenty-one, it was not error for a court to consider college expenses incurred during minority in setting child support. *Beberfall v. Beberfall,* 44 Wis. 2d 540, 543–44, 171 N.W.2d 390, 391–92 (1969).

[4]The concurrence errs in relying on sec. 767.25(2), Stats., which allows the establishment of a trust for educational purposes. That subsection, however, does not apply to what factors

court's inquiry to the period of the child's minority. However, when read in context with other case and statutory law and with the purposes of the legislation, we conclude consideration of expenses to be incurred by Stephanie as an adult was error.

Clearly, under Wisconsin law, a court cannot order support payments after the child has reached the age of majority:

> By statute, upheld in several cases in this court, in the absence of stipulation at least, the trial court's jurisdiction to make provisions for the care, custody, maintenance and education of children of the parties is limited to *minor* children, that is, those who have not yet reached their twenty-first birthday. As applied to a severely handicapped offspring, the application of the statute may be harsh. As applied to secondary education of any child, which nowadays customarily goes beyond the age of twenty-one, it may have become unrealistic. But the public policy set is for the legislature to establish, and for the legislature alone to amend or change.

*Bliwas v. Bliwas,* 47 Wis. 2d 635, 638, 178 N.W.2d 35, 36 (1970) (footnote omitted; emphasis in original). Since that time, the legislature reduced the age of majority to eighteen and later raised the age at which support obligations end to nineteen or the termination of high school. However, the general principle that the court may not exceed these legislatively drawn boundaries in setting support has remained constant.[5]

---

the trial court may consider in setting the level of child support, which is the major issue before this court.

[5]*See also Poehnelt v. Poehnelt,* 94 Wis. 2d 640, 655–56, 289 N.W.2d 296, 303 (1980); *Schmitz v. Schmitz,* 70 Wis. 2d 882, 889–90, 236 N.W.2d 657, 662 (1975); *O'Neill v. O'Neill,* 17 Wis. 2d 406, 408, 117 N.W.2d 267, 269 (1962); *Morris v. Morris,* 13

This case is different from those earlier cases because here the trial court ordered the stockpiling of money for future expenses prior to the child reaching the age of majority. We are not unmindful of the public policy arguments that support such an order. Post-high school education is increasingly important in the job market, and it seems appropriate that children with the aptitude and whose parents have adequate financial resources have this opportunity. The harsh result envisioned in the hypotheticals of the handicapped child who needs support past the age of majority, set out in *Bliwas* and *Poehnelt,* also would incline this court to look favorably on the stockpiling arrangement made here. Nor is this court ignorant of the admonition that a prohibition against accomplishing a result in an unlawful way does not prevent the accomplishment of the same result lawfully. *State ex rel. Thomson v. Giessel,* 271 Wis. 15, 42, 72 N.W.2d 577, 591 (1955) (citing *Tranter v. Allegheny County Authority,* 173 A. 289, 297 (Pa. 1934)). However, these arguments, and the interpretation urged by Clark, cannot be reconciled with the intent of the statute and equally valid public policy arguments on the other side.

A parent's child support obligation is more than an arbitrary figure set by a judge:

> A parent's legal obligation to meet [his or her] human and social responsibility of supporting children which they, of their own free will, bring into this society exists regardless of a support order setting an amount . . .. The support order does not create the support obligation, but rather reaffirms it and sets a specific sum to be paid.

Wis. 2d 92, 97, 108 N.W.2d 124, 126 (1961); and *Enders v. Enders,* 147 Wis. 2d 138, 146 n.3, 432 N.W.2d 638, 641 n.3 (Ct. App. 1988).

*State v. Duprey,* 149 Wis. 2d 655, 658–59, 439 N.W.2d 837, 838–39 (Ct. App. 1989). The obligation of a noncustodial parent, although formalized in court, does not differ in kind from that of any other parent.[6] And, although there may be strong reasons or even a moral responsibility to do so, the law does not require any parent to support his or her adult children. There is nothing to indicate that the legislature intended to alter that basic proposition in drafting the child support statute. Although parents should take an interest in their children's education beyond high school, we cannot dictate that they do so. Consequently, it was error for the court to consider Stephanie's potential expenditures as an adult in setting child support. We therefore remand the matter for further proceedings to determine whether a modification in the child support level is warranted without considering Stephanie's adult expenses.

A final word about the establishment of a trust. Here, our decision on the appropriateness of considering adulthood expenses in setting child support dispenses with the need for an extended discussion about this topic. Section 767.25(2), Stats., permits the establishment of a trust when doing so would be in the best interests of the child.[7] Nonetheless, the custodial parent should not lightly be stripped of her ability to make

---

[6]*See also Sommer v. Sommer,* 108 Wis. 2d 586, 590, 323 N.W.2d 144, 146 (Ct. App. 1982) ("[A] divorce terminates only the relationship of husband and wife, and does not affect in any manner the parental relations or duties of the parties.").

[7]Section 767.25(2) provides: "The court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children."

decisions concerning rearing her child. Eliminating a custodial parent's right to make spending decisions is more akin to altering the parents' custodial powers than it is to a modification of the amount of child support. Therefore, once support has been awarded absent a trust, we hold that the trial court must apply the "necessary to the best interest of the child" standard used in modifying custody determinations if it wishes to establish a sec. 767.25(2) trust. *See* sec. 767.325, Stats.

In the absence of factual findings suggesting the mother was incapable or unwilling to wisely spend the child support money, it was error for the court to dictate how those funds be spent. It was also error for the court to retroactively impose a trust on child support arrearages.[8] Therefore, because the trial court did not establish an adequate factual basis for its action, we hold that the establishment of the trust, whatever its purpose, was also an abuse of discretion and that, in the absence of further findings, the support payments should properly be managed by Helen, the custodial parent.

*By the Court.*—Order reversed and cause remanded.

MYSE, J. *(concurring)* I concur in the result reversing the trial court's order imposing a trust of $300 per month for Stephanie Vier's education after she attains her majority. I, however, would limit the basis of that decision to the fact that the trial court did not make a finding as to why the trust fund was necessary to protect the child's best interest. Had the court found

---

[8]However, had the trial court made proper factual findings, such a modification may have been proper. Because the original support order was entered prior to August 31, 1987, the trial court has the power to make retroactive modifications. *Schulz v. Ystad,* 155 Wis. 2d 574, 456 N.W.2d 312 (1990).

that the custodial parent would misapply or waste the child support benefits ordered under the guidelines such an order would have been authorized by statute.

There is a serious question as to whether the trial court has the power to create such a trust if it makes a finding that: (1) the custodial parent would misapply the support monies for business commitments unrelated to the child's well-being, and (2) there is more than sufficient money to support the child being paid to the custodial parent under the application of the child support guidelines. The majority opinion reasons that the prohibition against imposing support obligations after the child attains majority precludes the creation of a trust for educational purposes during the child's minority to be used after the child attains majority. I see no reason for extending the prohibition of *Bliwas v. Bliwas,* 47 Wis. 2d 635, 178 N.W.2d 35 (1970), to the facts of this case.

Section 767.25(2), Stats., provides: "The court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children." The clear language of this statute authorizes the payment of support obligations for educational purposes. If there is a danger that these payments would be misdirected, it is within the court's power to impose a trust to assure the proper application of these funds both during the child's minority, should extraordinary expenses occur, or, if the fund is intact at the time the child attains majority, for further educational purposes.

Further restricting the court's power to protect the best interests of children granted by this statute is both unnecessary and unwise. When a court-created rule limits the power granted by statute, the limitation should be

read narrowly rather than expansively so as not to further obstruct the purpose of the statute. It is not necessary to go so far in resolving the issue before us. I therefore concur in the result, but specifically wish to reserve the issue as to whether, under the appropriate circumstances, such a trust fund can be imposed.