[No. 2538–3.   Division Three.   August 3, 1978.]

MARY T. MOORE, *Respondent,* v. RONALD T. MOORE, *Appellant.*

910

*David D. Kilpatrick,* for appellant.

*Delay, Curran & Boling* and *Michael J. Pontarolo,* for respondent.

MUNSON, C.J.—Ronald T. Moore appeals from an order entered after a show cause hearing determining the amount of delinquent child support due his former wife, Mary T. Moore.[1] The primary issue on appeal is whether his former wife was the real party in interest since she had received public assistance monies during a 3-year period after their divorce. RCW 74.20A.250[2] requires an assignment of her interest to the State by operation of law.

The parties were divorced March 12, 1969; the decree required Mr. Moore to pay $150 per month child support

---

[1] Also known as Mary T. Mintzer.

[2] "By accepting public assistance for or on behalf of a child or children, the recipient shall be deemed to have made assignment to the department of any and all right, title, and interest in any support obligation owed to or for said child or children up to the amount of public assistance money paid for or on behalf of said child or children for such term of time as such public assistance moneys are paid." RCW 74.20A.250.

for their three children. From June 1971 to September 1974, Mrs. Moore received 40 public assistance payments; Mr. Moore received 21 public assistance payments during a period from 1971 to 1973.

In June 1977, Mrs. Moore began a show cause proceeding to determine the amount of delinquent child support. The court found that a portion of her request had been barred by the 6–year statute of limitations and entered an order fixing the amount of delinquent support, including interest, at $10,665. The court, in its order, expressly recognized the subrogation rights of the State of Washington Department of Social and Health Services for the period of time Mrs. Moore had received public assistance.[3]

A month later Mr. Moore moved to join the Department of Social and Health Services of the State of Washington as a necessary party. The motion was denied, but the court amended its order segregating the amount of the award: Mrs. Moore's award was reduced to $8,125; the court reserved $2,615 to the State as of July 22, 1977.[4] The court also released the plaintiff from her "duty to the State of Washington, as to subrogation in light of the separate judgments."

---

[3] "[A]ny payment of public assistance money made to or for the benefit of any dependent child or children creates a debt due and owing to the department by the natural or adoptive parent or parents who are responsible for support of such children in an amount equal to the amount of public assistance money so paid: *Provided,* That where there has been a superior court order, the debt shall be limited to the amount provided for by said order. . . .

". . . If a superior court order enters judgment for an amount of support to be paid by an obligor parent, the department shall be subrogated to the debt created by such order, and said money judgment shall be deemed to be in favor of the department. . . .

"Debt under this section shall not be incurred by nor at any time be collected from a parent or other person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status." RCW 74.20A.030.

[4] The amount was established by a letter filed with the court from the department in which the department deducted the amount which Mr. Moore had received for 21 months. This left a balance of 19 months times $150 per month

Mr. Moore's basic contention on appeal is that Mrs. Moore was not entitled to a judgment for any child support during the 40 months in which she was paid public assistance because she had assigned all her right, title and interest to support payments to the State. Therefore, as assignee of those rights, the State was the proper party to bring the action as the "real party in interest." *Bench v. State Auto. & Cas. Underwriters, Inc.,* 67 Wn.2d 999, 408 P.2d 899 (1965).

A literal interpretation of RCW 74.20A.250 might support Mr. Moore's contention. As a general rule, an assignee who receives full title and interest, in this case the State, "stands in the shoes of his assignor." *Paullus v. Fowler,* 59 Wn.2d 204, 212, 367 P.2d 130 (1961). Mrs. Moore sought delinquent child support under the 1969 decree for the entire amount to which she was entitled. Part of that amount had been assigned. *See Hoeppner Constr. Co. v. United States,* 287 F.2d 108 (10th Cir. 1960), interpreting the law of the state of Colorado as to partial assignments. Mr. Moore suggests that Mrs. Moore should have brought an action only for the amount accruing after she stopped receiving public assistance and the State should then be required to bring a separate action, or be joined as a necessary party, for the amount which had been paid in public assistance.

We do not perceive the intent of the legislature to require such a result in a case where the rights of the State were clearly protected, *i.e.,* where subrogation rights were reserved. The purpose of the adoption of RCW 74.20A was to do exactly what its title suggests,[5] that is, to provide the Department of Social and Health Services alternative means to recoup monies paid for aid to dependent children. An assignment is only one alternative; a second method is subrogation. RCW 74.20A.250; RCW 74.20A.030.

■ The assignment section of the act must be read in conjunction with the subrogation section to give effect to

support pursuant to the 1969 court decree for a total of $2,850 less $235 previously paid to the department.

[5]Support of Dependent Children—Alternative Method—1971 Act.

the purpose of the statute. It is well settled that "if alternative interpretations are possible, the one that best advances the overall legislative purpose should be adopted" and should be determined in the context of the entire statute. *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976).

The statement of purpose in an act is the "primary insight into the intent of the legislature . . ." *Anderson v. O'Brien*, 84 Wn.2d 64, 67, 524 P.2d 390 (1974). In RCW 74.20A.010, the language expressly declares that the purpose of the act is to augment by additional remedies those remedies already in existence. The statute was enacted as a redoubled enforcement effort to require parents to contribute to their children's support. *Taylor v. Morris*, 88 Wn.2d 586, 564 P.2d 795 (1977); *Williams v. Department of Social & Health Servs.*, 529 F.2d 1264 (9th Cir. 1976). Prior to the enactment of RCW 74.20A, the legislature had adopted provisions whereby the State could seek reimbursement from parents for child support through "any civil proceedings deemed necessary." RCW 74.20.220(5). Two statutes relating to the same subject matter which are not in conflict should be interpreted to give meaning and effect to both. *Davis v. County of King*, 77 Wn.2d 930, 468 P.2d 679 (1970). To require the State to bring an action directly in every case in which public money has been expended to aid dependent children would simply give the State a right it already had under the previous statute and would render meaningless the subrogation right given to the State. "[T]he courts are obliged to interpret a statute, if possible, so that no portion of it is superfluous, void, or insignificant." *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 288, 494 P.2d 216 (1972).

It is required as a condition to receiving public assistance that a parent with rights to child support assign those rights to the State.[6] The Department of Social and Health Services may well determine, however, that the child's need

---

[6]This method, adopted by Washington in 1971, was approved in 1974 by the

is greater than the order for support set forth in the decree. But under RCW 74.20A.030, the State is not subrogated to anything in excess of the amount awarded in the original decree. If a parent chooses to bring an action for child support owed under the decree, including the amount of public assistance received, particularly as in the present case, at her own expense, and the court recognizes the State's right to subrogation, then the purpose of the statute has been accomplished.

█ █  Subrogation is an equitable matter subject to equitable defenses and essentially involves three parties, wherein the subrogee answers for the debt of another. *See Livingston v. Shelton,* 85 Wn.2d 615, 537 P.2d 774 (1975), *cert. denied,* 424 U.S. 958, 47 L. Ed. 2d 365, 96 S. Ct. 1437 (1976). The legislature, in considering the equities, exempted a parent for any debt incurred for child support during the time that parent had received public assistance. RCW 74.20A.030, see footnote 3. It is not necessary that a subrogee be a party to the lawsuit. *Nelson v. Northern Pac. Ry.,* 158 Wash. 52, 290 P. 432 (1930); *Lizotte v. Lizotte,* 15 Wn. App. 622, 551 P.2d 137 (1976).

The State had not brought an action in its own right during the period 1971 to 1977 to collect the support it had been paying for Mr. and Mrs. Moore's three children. This should not preclude the wife from proceeding in her own right. She acknowledged at the outset that the State had an interest in the outcome. A better procedure might have been to serve a copy of the motion to show cause on the State so that it would have been aware of the proceedings earlier in order to give the department an opportunity to intervene. However, under these circumstances, she should not be estopped to proceed by the State's failure to prosecute. Consistent with the policy of the legislature, the State's right to subrogation was recognized. The judgment

federal government as an additional remedy for enforcement of child support and adopted as an amendment to apply to all states receiving AFDC (Aid to Families with Dependent Children) funds. 42 U.S.C. § 602(a)(26)(A) (Supp. 1975).

was amended protecting the husband against a double collection and, based on the department's letter, established the amount to which the State was entitled.

Judgment affirmed.

JAMES and McINTURFF, JJ., concur.

Reconsideration denied September 14, 1978.

Review denied by Supreme Court February 2, 1979.