No. 83-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN RE THE MARRIAGE OF
JEANNE M. GOOD, n/k/a JEANNE
M. HARGETT,

                              Plaintiff, Respondent and
                              Cross-appellant,

    and

ORVILLE K. GOOD,

                              Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable J.M. Salansky, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Garlington, Lohn & Robinson; E. Craig Daue, Missoula,
        Montana

    For Respondent:

        Hash, Jellison, O'Brien & Bartlett; James C. Bartlett,
        Kalispell, Montana

---

                    Submitted on Briefs:  June 7, 1984
                            Decided:  November 15, 1984

Filed: *Nov. 15, 1984*

*Ethel M. Harrison*
_____
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant, Orville K. Good, filed a motion in the Eleventh Judicial District, County of Flathead, seeking to have the District Court declare his child support obligation fully paid through the date of the motion. The Honorable James M. Salansky conducted an evidentiary hearing and entered an order in favor of appellant's wife for child support arrearage in the amount of $8,264.06. From that order Mr. Good appeals and his ex-wife cross appeals. We affirm.

## Issues

(1) Whether an obligor husband may be given credit against his child support obligation for payments made outside the ambit of the divorce decree when the obligee wife has orally agreed to such credit.

(2) When an obligee wife who has assigned her child support rights under a Montana decree to another state and that state agrees with the obligor husband during the term of the assignment to a reduction in his obligation, is the wife later entitled to judgment against the husband for: a. the amount of the reduction; b. any other part of the child support assigned?

(3) Did the trial court make a mathematical error in computing the amount of child support accrued?

## Facts

By decree dated June 10, 1970, the marriage between appellant and respondent was terminated, the four minor

-2-

children were placed in the custody of their mother and appellant was ordered to pay fifty dollars per child per month child support. The decree was issued by the Eleventh Judicial District in and for the County of Flathead.

Respondent has lived in the State of Washington since before the divorce in 1970. Appellant has consequently made his child support payments to the Washington Department of Social and Health Services (WDSHS) and in July 1970 WDSHS reduced appellant's support payments to a total of $150 per month. WDSHS was the payee of appellant's support payments through September of 1979. From time to time between the date of the divorce and September of 1979, respondent received public assistance from WDSHS and as a condition to receiving such assistance assigned her support rights to that agency. The last time such an assignment was made, June 6, 1979, respondent assigned to WDSHS all unpaid child support accrued to that date under the Montana decree.

Appellant and respondent agreed orally between themselves that appellant would pay certain of the children's medical and dental bills and in return respondent would give him credit against his child support obligation. The parties further agreed informally that appellant would not be obligated to respondent for support of a child while that child lived with him.

Each of the four children has lived with appellant for certain periods of time since the date of the divorce. Appellant has also paid certain medical and dental bills incurred by the children. In each instance appellant has taken credit against his support obligation by not making certain payments to respondent.

Through correspondence with appellant during 1982, WDSHS agreed to accept $3,000 as full payment of support obligation from the date of the divorce through September of 1979.

By motion dated November 10, 1982, appellant sought an order of the District Court declaring his child support obligation fully paid through that date. At no time prior to that motion did respondent seek to enforce her child support rights other than through the WDSHS.

## Discussion

### I.

Appellant's first issue on appeal and respondent's lone cross-appeal issue is whether it is proper to allow a non-custodial parent credit against child support arrearage for sums he paid to physicians and dentists in reliance upon an oral promise of credit by the custodial parent.

Based upon substantial evidence presented at the evidentiary hearing, the District Court Judge held there was a proper agreement between the parents regarding credit for payment of medical and dental bills and accordingly awarded appellant more than $1,600 credit against his support obligation. Respondent argues the District Court erred in so holding because such a ruling essentially permits the non-custodial parent to substitute his own judgment for that of the custodial parent as to how child support monies are to be spent. This argument is misplaced. The District Court did not rule on whether the father's judgment was being substituted for the mother's but rather ruled on

whether there was an agreement between the two parents on this issue. The District Court found such an agreement between the parties and we see no error in that finding.

The wife asked the husband to pay bills in lieu of support payments and he did so, relying on her judgment. Clearly, there was no substitution of judgment involved.

Respondent further argues the dissolution decree cannot be modified to reduce or cancel past due and unpaid child support and then cites six cases to buttress the point. In one of those cases, Williams v. Budke (1980), 186 Mont. 71, 606 P.2d 515, this Court spelled out the correct approach to this issue (an approach evidently overlooked by respondent):

> "Two Montana decisions have addressed the issue of whether a parent upon whom a child support obligation rests should be granted credit for voluntary expenditures made in a manner other than that specified in the support order or dissolution decree. Haaby v. Haaby (1974), 165 Mont. 475, 529 P.2d 1387; Weber v. Weber (1978), Mont., 576 P.2d 1102, 35 St.Rep. 309. However, after examining the case law of this and other jurisdictions we have found the basic question addressed by the courts is whether there has been substantial compliance, in whole or in part, with the child support order. Was the spirit and purpose of the support order accomplished without violating any other provision of the dissolution decree? We believe this is the correct approach to the issue."

In the instant case, we find no violation of the spirit and purpose of the support order by granting appellant credit for payments made to medical institutions. This is true particularly since respondent asked appellant to do so. It was nothing more than a streamlining of a payment process; husband paid the doctors directly rather than going through the wife as an intermediary. The dissolution decree was

left unscathed by the transaction and we will not agree with respondent's contention that the District Court modified the divorce decree.

## II.

Next, appellant asserts as error the District Court's ruling that respondent was entitled to a judgment against him for the amount of the reduction in support payments granted by the WDSHS and for any part of the child support assigned by respondent to the WDSHS.

In order to receive public assistance from the State of Washington, respondent assigned all of her unpaid child support accrued through September 30, 1979 to the WDSHS. During the term of the assignment the WDSHS agreed to a reduction in support and to a compromise of the arrearage with appellant. Appellant accepted, and made reduced payment to WDSHS.

The court's findings of fact no. 7 and no. 8 were as follows:

> "7. That through January, 1983, and considering the dates three of the children obtained the age of majority, the total obligation of $50.00 per month per child is $25,000.00. The records maintained by the State of Washington through September 18, 1975, show payments of $7,057.50. In addition, Plaintiff has acknowledged payments totaling $5,000.00 through January 1983. In addition, a recent payment made by attachment to Defendant's IRS check in the sum of $698.96 should be credited.
>
> "8. That the total amount of arrearage due is calculated as follows:

| | |
|---|---|
| Total per Decree | $25,000.00 |
| Less records by State of Washington | -$7,057.50 |
| Less payment acknowledged | -$5,000.00 |
| Less IRS payment | -$ 698.96 |

| | |
|---|---|
| Less credits for stay | -$2,600.00 |
| Less credits for medical, dental and orthodontal payments | -$1,629.48 |
| TOTAL DUE through Jan. 1983 | $8,014.06" |

Thereafter, the court made the following conclusions of law and order:

"1. Pursuant to 40-4-208, MCA, the Court may modify child support only as to installments accruing subsequent to the time a motion for modification is filed. No motion for modification was submitted and the obligation to pay child support at $50.00 per month per child remains unchanged. That the Court finds no agreement on the part of Plaintiff to reduce the $50.00 sum to $37.50.

"2. That Defendant should be given credit for payments on behalf of the children made in the past for medical, dental or orthodontal expenses.

"3. That the divorce decree provided for no cessation of support payments during the summer visitation periods and Defendant should be given no credit for same other than those amounts hereinbefore given.

"4. Defendant had the burden of proof of showing payment of his support obligation and that burden has not been met.

"5. The Court has jurisdiction over this matter and has the right to protect the parties by making the obligation for arrearage payable jointly to Plaintiff and the State of Washington, Welfare Department.

ORDER

"1. That the Plaintiff shall recover of the Defendant the sum of $8,264.06, and costs of suit;

"2. That the voluntary payment of said sum by Orville K. Good shall be made by check or money order made payable to Jeanne M. Hargett and the State of Washington, Welfare Department;

"3. That in the event the sum is collected involuntarily by execution, Jeanne M. Hargett shall report the amount received to the Washington Department of

Welfare;

"4. That the request of Jeanne M. Hargett to have her travel expenses paid and to have attorney's fees assessed, together with her motion for increased child support will be heard by the Court on the 19th day of August, 1983, at 9:30 o'clock, a.m.; and the Defendant shall have his affidavit of financial statement filed ten (10) days before said hearing. Defendant shall produce for examination by Plaintiff's counsel his 1980 and 1981 income tax return as well as wage statements for 1982 ten (10) days before said hearing."

The appellant argues that due to the fact his wife received public assistance from the State of Washington and assigned all of her unpaid child support accrued through September 30, 1979 to the WDSHS, he has no further obligation to pay the amount set forth in the decree. He argues the WDSHS has the statutory authority to compromise or charge off any support arrearages assigned to it and that during the term of the assignment the WDSHS agreed to the reduction of the support. He further argues that because his wife acquiesced in the actions taken by the appellant with the WDSHS for a period of thirteen years, she is circumventing the effect of her unconditional assignment of support to the WDSHS and the resulting compromise made with that agency. He further argues the wife's assignment of her child support rights under the Montana decree is valid. He cites the divorce decree herein is a judgment under Montana law. Rule 54(A) Montana Rules of Civil Procedure. "There can be no question that a judgment is assignable." Ginsberger v. Adams (1922), 62 Mont. 430, 205 P. 658.

We do not find the above citation applicable to this case. There is no question the effect of the wife's interest in the accrued support payments to the state can be

-8-

assigned and allows the state to step into the shoes of the wife. However, the wife does not have the right to modify the divorce decree for the accrued child support payments. Nor does entering into an assignment to receive welfare in any way affect the judgment of a court of this state. See, In re the Marriage of Linda Williams and Larry Williams (Mont. 1980), 612 P.2d 212, 37 St.Rep. 974; Williams v. Budke (1980), 186 Mont. 71, 606 P.2d 515; Dahl v. Dahl (1978) 176 Mont. 307, 577 P.2d 1230. The appellant relies on a Washington compromise statute for his assertion that the dissolution decree can be modified as to accrued child support. This compromise statute provides in part: "The Department may accept offers of compromise of disputed claims from a partial or total charge-off of support arrears owed to the Department to the total amount of public assistance paid to or for the benefit of persons for whom the support obligation is incurred." See R.C.W. 75.20 A.220. It should be noted that the statute referred to and relied upon, reveals that the state may only compromise arrears owed to the state. The statute does not pertain to support arrears due a parent. Clearly the state is not subrogated to anything in excess of the amount awarded in the original decree. As noted in Moore v. Moore (Wash. App. 1978), 583 P.2d 1249, the Washington court followed its own court decision and held that its subrogation rights only apply to the amount of the court ordered support, and does not apply to the full amount that was paid by the State of Washington to the respondent in this case during the time she was on welfare.

Appellant finally asserts as error the District Court's mathematical computation in adding a disallowed credit to the total amount of support accrued. We need cite no authority to settle a question of simple mathematics. Appellant owes X amount of arrearage. From that total he claims Y amount of credits. The District Court cannot do more than disallow the claimed credits to the total amount of arrearage, to do so would be to charge appellant twice for an indebtedness--the mathematical equivalent of double jeopardy.

## Summary

Our holding today is designed to enforce the terms of support as specified by the District Court decree; not to enforce an extrajudicial modification by the WDSHS. However, since the WDSHS is an assignee it has the right to proceed against the husband for any arrearages under its agreement with him. "This should not preclude the wife from proceeding in her own right." Moore v. Moore (Wash. App. 1978), 583 P.2d 1249, 1252. In Moore the wife had assigned her support payments to the WDSHS in order to receive public assistance. The husband had fallen behind in his payments sometime during the assignment and continued to be delinquent even after the assignment had been discontinued. The wife then started a show-cause proceeding to determine the amount of delinquent child support. The court entered an order fixing the amount of delinquent support and a month later the husband moved to join the WDSHS as a necessary party. The court denied the motion but amended the amount

of delinquent support segregating what was owed the wife and what was owed the husband.

The husband appealed contending his ex-wife "was not entitled to a judgment for any child support during the 40 months in which she was paid public assistance because she had assigned all her right, title and interest to support payments to the state." Moore, at p. 1251. The Court of Appeals of Washington affirmed the wife's right to proceed in her own right against the husband even for the period she had assigned her support rights to the WDSHS. The court reasoned the intent of the legislature when it enacted the statute requiring the payee of public assistance to assign all support rights is to recoup public monies. Therefore the WDSHS has a right to subrogation against the wife's judgment. However, the court stated:

> "A better procedure might have been to serve a copy of the motion to show cause on the state so that it would have been aware of the proceedings earlier in order to give the department an opportunity to intervene. However, under these circumstances, she should not be estopped to proceed by the state's failure to prosecute." Moore at p. 1252.

In other words, simply because the WDSHS had allowed the husband to fall into arrears on his support during the period of assignment the wife was not precluded from seeking to collect those arrears.

In the instant case we similarly hold the wife may sue to recover any arrearages under the Montana decree, the agreement between the husband and the WDSHS notwithstanding. This holding today is not to be construed to subject the husband to a double collection but rather to allow the wife to proceed on her own right while allowing the WDSHS (or any

-11-

other public assistance agency of any other state similarly situated) the right of subrogation against a recovery by her.

We hold that neither Washington nor Montana case or statutory law permits the modification of a dissolution decree to reduce or cancel past due or unpaid child support payments and that the trial court did not err in granting the respondent, wife, a judgment for child support pursuant to the dissolution decree, including the amount of the public assistance received during that time.

The judgment of the District Court is affirmed, except for the ~~$25~~ $250.00 (By order dated 11/28/84 CH) mathematical error discussed in issue III. We return to the District Court with instructions to change its order to comply with this opinion.

_____Conway Harrison_____
Justice

We concur:

_Daniel J. Shea_

_____

_L. C. Gulbrandson_

_John C. Sheehy_
Justices

-12-