In RE the MARRIAGE OF: Julie SCHULZ, Petitioner-Appellant,

v.

Roger YSTAD, Respondent-Petitioner.

Supreme Court

*No. 88-2018-FT. Argued March 27, 1990.—Decided June 6, 1990.*

IN RE the MARRIAGE OF Donald K. THOMPKINS and Jackie Thompkins: RACINE COUNTY CHILD SUPPORT AGENCY and Jacqueline Hunter, Respondents,†

v.

Donald THOMPKINS, Appellant-Petitioner.

*No. 88-0952. Submitted on briefs March 28, 1990.—Decided June 6, 1990.*

IN RE the MARRIAGE OF: Eileen M. PIASKOSKI, Petitioner-Respondent-Petitioner,

†Motion for reconsideration denied.

v.

Paul A. PIASKOSKI, Appellant.

*No. 88–1631. Submitted on briefs March 28, 1990.—Decided June 6, 1990.*

IN RE the MARRIAGE OF: Mary Carol HARMS
n/k/a Mary Carol Parquet, Petitioner-Respondent,

v.

David L. HARMS, Respondent-Appellant.

*No. 88–1594. Submitted on briefs March 28, 1990.—Decided June 6, 1990.*

(Also reported in 456 N.W.2d 312.)

For the respondent-petitioner there were briefs by *John M. Langer,* Baraboo and oral argument by *John M. Langer.*

For the petitioner-appellant there was a brief by *Mark R. Reitz* and *Quale, Hartmann, Bohl, Stevens & Reynolds, S.C.,* Baraboo and oral argument by *Mr. Reitz.*

Amicus curiae brief was filed by *Donald P. Johns,* assistant attorney general and *Donald J. Hanaway,* attorney general and *Constance M. Chesnik, Sherwood K. Zink,* Department of Health and Social Services, of

counsel, for the Attorney General of the State of Wisconsin.

Amicus curiae brief was filed by *Jack Longert* and *Legal Assistance to Institutionalized Persons Program,* Madison, for the Legal Assistance to Institutionalized Persons Program.

For the appellant-petitioner there were briefs by *Eric Schulenburg,* assistant state public defender.

For the respondents there was a brief by *William H. Honrath,* deputy family court commissioner, Racine and *Sherwood Zink,* Department of Health and Social Services.

Amicus curiae brief was filed by *Donald P. Johns,* assistant attorney general and *Donald J. Hanaway,* attorney general and *Constance M. Chesnik, Sherwood K. Zink,* Department of Health and Social Services, of counsel, for the Attorney General of the State of Wisconsin.

Amicus curiae brief was filed by *Jack Longert* and *Legal Assistance to Institutionalized Persons Program,* Madison, for the Legal Assistance to Institutionalized Persons Program.

For the petitioner-respondent-petitioner there was a brief by *Nancy Phelps* and *Blumenthal, Jacquart, Blumenthal & Leib, S.C.,* Milwaukee.

For the appellant there was a brief by *Paul A. Piaskoski* and *Piaskoski & Associates, S.C.,* Milwaukee.

Amicus curiae brief was filed by *Donald P. Johns,* assistant attorney general and *Donald J. Hanaway,*

attorney general and *Constance M. Chesnik, Sherwood K. Zink,* department of health and social services, of counsel, for the Attorney General of the State of Wisconsin.

Amicus curiae brief was filed by *Jack Longert* and *Legal Assistance to Institutionalized Persons Program,* Madison, for the Legal Assistance to Institutionalized Persons Program.

For the respondent-appellant there were briefs (in the court of appeals) by *Christopher D. Walther, Faye M. Wellworth* and *Christopher D. Walther & Associates, S.C.,* Milwaukee.

For the petitioner-respondent there was a brief (in the court of appeals) by *Terry M. Iaquinta* and *Madgrigrano, Gagliardi, Zievers and Aiello, S.C.,* Kenosha.

Amicus curiae brief was filed by *Jack Longert* and *Legal Assistance to Institutionalized Persons Program,* Madison, for the Legal Assistance to Institutionalized Persons Program.

LOUIS J. CECI, J. These cases were consolidated in this court for purposes of decision. In each case, a child support arrearage accrued pursuant to an order or judgment for support entered prior to August 1, 1987, and the parent obligated to pay support sought reduction of the arrearage after that date. The cases present a common issue concerning the application of sec. 767.32(1m), Stats., which became effective on August 1, 1987, and provides that the circuit court may not revise the amount of child support due under an order or judg-

ment for support prior to the date that notice of a petition to revise support is given to the custodial parent. The common issue is whether sec. 767.32(1m) applies retroactively to prohibit the circuit court from reducing or eliminating child support arrearages which accrue, or have accrued, pursuant to orders or judgments for support entered prior to the effective date of the statute.

In *Schulz,* the court of appeals held, in an unpublished decision filed May 18, 1989, that the statute applied retroactively and reversed an order of the circuit court for Sauk County, Robert F. Curtin, Circuit Judge, which expunged a child support arrearage on the basis of the law in effect prior to August 1, 1987. In *Thompkins,* the court of appeals held, in an unpublished decision filed June 21, 1989, that the statute applied retroactively and affirmed an order of the circuit court for Racine County, Dennis J. Flynn, Circuit Judge, which dismissed a motion to reduce a child support arrearage. In *Piaskoski,* the court of appeals implicitly held that the statute applied retroactively, but that it did not prevent the court from granting credit against a child support arrearage, and reversed an order of the circuit court for Milwaukee County, Patrick T. Sheedy, Circuit Judge, which denied a request to credit a child support arrearage. *Marriage of Piaskoski v. Piaskoski,* 151 Wis. 2d 549, 445 N.W.2d 327 (Ct. App. 1989). In *Harms,* the circuit court for Walworth County, John R. Race, Circuit Judge, apparently concluded that the statute applied retroactively and entered a judgment of contempt for nonpayment of child support. The court of appeals certified the case to this court.

We conclude that sec. 767.32(1m), Stats., applies prospectively only and that child support arrearages which accrue, or have accrued, pursuant to an order or judgment for support entered prior to August 1, 1987,

may be modified, reduced, or eliminated in accordance with the law in effect in this state prior to the effective date of the statute.[1] We therefore reverse the decisions of the court of appeals in *Schulz* and *Thompkins* and vacate the judgment of the circuit court in *Harms*. Although we agree with the result reached by the court of appeals in *Piaskoski,* we disagree with the court of appeals' implicit holding that sec. 767.32(1m) applies retroactively and its construction of the statute in light of the facts of that case.

Our conclusion that the present cases are governed by the prior law of this state requires us to determine whether the circuit courts in *Schulz, Thompkins,* and *Harms* abused their discretion in reducing or failing to reduce the support arrearages on the basis of a change of circumstances of the parties or children which rendered the level of child support ordered unfair. We hold that the circuit court properly exercised its discretion in *Schulz,* and we therefore uphold the circuit court's determination to expunge the support arrearage in full. We further hold that the circuit courts in *Thompkins* and *Harms* erred in failing to exercise their discretion on the basis of the controlling law and relevant facts of record. We therefore remand those cases to the circuit courts to determine whether the child support arrearages may be reduced or eliminated under the prior law of this state.

We also address an issue raised in both the *Piaskoski* and *Harms* cases concerning the allowance of equitable credits under prior law. Specifically, the issue is whether the circuit court may, in its discretion, grant credit against child support arrearages for expenditures

---

[1]On this review, Donald Thompkins argues that if sec. 767.32(1m) applies retroactively, then it is unconstitutional. Because we conclude that the statute applies prospectively, we do not reach the constitutional issue.

made for a child's support in some manner other than that specifically prescribed in the order or judgment for support. We hold that the circuit courts may grant such credits if the expenditures were made by the noncustodial parent for the child's support either under compulsion of the circumstances or with the express or implied consent of the custodial parent. Accordingly, we remand the *Piaskoski* and *Harms* cases to the circuit courts to determine whether credit may be granted under the principles set forth in this decision.

The facts of the cases follow.

## I. *In re Marriage of Schulz v. Ystad*

On January 4, 1979, Julie Schulz filed a petition for divorce from her spouse, Roger Ystad. The petition alleged that two minor children had been born to the marriage: Lori (born September 17, 1962) and Lisa (born January 13, 1964). The circuit court granted the divorce by judgment effective August 27, 1979. The judgment incorporated the provisions of a final stipulation entered between the parties. The stipulation provided that Julie would have custody of Lori and Lisa and set forth Roger's child support obligation as follows:

2. CHILD SUPPORT.
A. Until further order of the Court, [Roger Ystad] shall pay the sum of Four Hundred Fifty and no/100 ($450.00) Dollars per month toward the support of the minor children of the parties. Such payments shall be payable on the 15th and 30th of each month commencing with the 30th day of August, 1979.
B. Further, said payments shall continue until June 1, 1981, at which time the support for Lori Rae shall terminate. The support for Lisa Ann shall then continue on until June 1, 1982, in the sum of Two

Hundred Fifty and no/100 ($250.00) Dollars per month payable on the 15th and 30th of each month.

. . .

Roger was current in his child support payments until October 14, 1980, when Lori moved out of her mother's home to live with the Cox family in Baraboo, Wisconsin. Lori resided with the Coxes from October of 1980 until sometime after her high school graduation in June of 1981. After Lori moved out of her mother's home, Roger made a child support payment of $162.50 on October 20, 1980, and made another payment of $225.00 on November 4, 1980. Thereafter, Roger made child support payments of $175.00 semimonthly. In July of 1981, Roger reduced his child support payments to $125.00 semimonthly. Lisa turned eighteen on January 13, 1982, and completed her high school course work that month. Roger ceased making child support payments after Lisa had finished her high school course work in January of 1982.

On June 8, 1988, Julie filed a motion with the circuit court, requesting that the court hold Roger in contempt for his failure to make child support payments pursuant to the judgment of divorce. The motion alleged that, as of June 4, 1982, Roger was in arrears in his child support payments in the amount of $1,862.50 and demanded payment of the amount of the arrearage plus interest. The court heard the motion on June 22, 1988. At the hearing, Roger argued that the child support arrearage should be reduced or expunged to reflect the fact that Julie was not supporting Lori after she moved out of Julie's home in October of 1980 and was not supporting Lisa after she turned eighteen and finished her high school course work in January of 1982. The court subsequently adjourned the hearing to allow the

585

parties to file briefs addressing the issue of whether sec. 767.32(1m), Stats., applied retroactively to prohibit the court from expunging a support arrearage which accrued prior to August 1, 1987, the statute's effective date.

On September 23, 1988, the circuit court reconvened the motion hearing and made an initial ruling that sec. 767.32(1m), Stats., did not apply retroactively. The court then heard testimony to determine whether the child support arrearage should be expunged on equitable grounds. Both Julie and Roger testified that under the terms of the final stipulation, Roger's obligation to pay child support extended beyond Lori's and Lisa's eighteenth birthdays to the date that each girl was expected to finish high school. Julie also testified that during the time that Lori resided with the Coxes, Roger continued to make reduced child support payments for Lori and that she used the support money to help pay for Lori's clothing, school expenses, eyeglasses, prescription medication, and other living expenses. Julie further testified, contrary to the testimony of Carol Cox, that she made three or four $50.00 payments to the Coxes to pay for Lori's room and board. Julie produced only one canceled check to verify the payments that she allegedly made on Lori's behalf.

At the conclusion of the hearing, the circuit court stated that it was not satisfied that Julie had made payments to the Coxes or that Julie was otherwise supporting Lori after she moved out of Julie's home. The court further stated that after Lisa turned eighteen and completed her high school education in January of 1982, she was no longer entitled to child support. The circuit court expunged the child support arrearage in full and dismissed the motion for contempt by order entered October 6, 1988.

Julie appealed to the court of appeals, which reversed. The court of appeals held that sec. 767.32(1m), Stats., applied retroactively and prohibited the circuit court from modifying or expunging a child support arrearage which accrued prior to August 1, 1987, the statute's effective date.

Roger petitioned this court for review of the decision of the court of appeals, which we granted.

## II. *In re Marriage of Thompkins*

Donald and Jackie Thompkins were married on July 24, 1982. A child had been born to the couple on January 29, 1982. The record suggests that Donald was separated from Jackie for approximately four years. The record further suggests that at some point during the separation Jackie applied for and began receiving benefits through the Aid to Families with Dependent Children (AFDC) program. Donald filed a petition for divorce from Jackie on November 14, 1986. On December 22, 1986, a deputy family court commissioner for the Racine County Child Support Agency filed a motion to compel Donald to pay support for his minor child. The motion alleged that Donald owed support arrearages to the state of Wisconsin in the amount of $4,292.00. On January 9, 1987, the circuit court entered an order requiring Donald to pay child support.

On November 3, 1987, the circuit court issued an order requiring Donald to show cause why he should not be held in contempt for his failure to pay child support in the amount of $4,658.00. On January 28, 1988, Donald filed a motion to modify the arrearage, alleging that he had experienced a significant change in financial circumstances during the period in which the arrearage accrued and that the arrearage should be modified retroactively to reflect his reduced ability to pay support during that

period. On February 11, 1988, a family court commissioner rendered a decision denying the motion.

On March 2, 1988, Donald filed a motion with the circuit court for review of the decision of the family court commissioner. The circuit court heard the motion on April 6, 1988. At the hearing, Donald argued that sec. 767.32(1m), Stats., should not be applied retroactively to prohibit the court from modifying or expunging a child support arrearage which accrues, or has accrued, pursuant to an order for support entered prior to August 1, 1987, the effective date of the statute. The circuit court ruled that sec. 767.32(1m) prohibited the court from retroactively modifying the support arrearage and dismissed Donald's motion by order entered May 10, 1988.

Donald appealed to the court of appeals, which affirmed. The court of appeals held that after August 1, 1987, sec. 767.32(1m), Stats., operated to deprive the circuit court of competency to modify the amount of child support due prior to the date that notice of a petition to revise support is given to the custodial parent.

Donald then petitioned this court for review of the decision of the court of appeals, which we granted.

### III. *In re Marriage of Piaskoski*

Eileen M. Piaskoski filed a petition for divorce from her spouse, Paul A. Piaskoski. The circuit court for Milwaukee county granted the divorce by judgment effective April 7, 1986. The judgment provided that Eileen was to have physical custody of the couple's two minor sons, Ray and Tom. The judgment further provided that Paul was to pay child support in the amount of $260.00 per month per child in Eileen's custody. Eileen remarried on November 1, 1986. Sometime after the remarriage, Tom expressed his desire to spend more time with his father, and Eileen and Paul apparently agreed that Tom should

live with Paul. Tom moved in with his father on or about January 1, 1987. Thereafter, Paul continued to make child support payments as ordered in the judgment of divorce until June of 1987, when he ceased making payments.

On September 23, 1987, and on December 29, 1987, the circuit court issued orders requiring Paul to show cause why he should not be held in contempt for nonpayment of child support in the amount of $4,063.00. On the basis of an affidavit prepared by Paul on November 17, 1987, the circuit court also issued an order requiring Eileen to show cause why Paul should not receive credit against the child support arrearage for amounts which he paid directly for Tom's support during 1987 and for amounts which he paid on a doctor's bill and a heating bill that had been assigned to Eileen under the judgment of divorce.

The circuit court held a hearing on the orders to show cause on January 4, 1988. At the hearing, Paul testified that Tom lived with him at his home for at least 223 days in 1987 and that he provided and paid directly for Tom's food, shelter, clothing, transportation, and other living expenses during that time. Paul further testified that Eileen was ordered to pay a heating bill in the amount of $382.00 and a doctor's bill in the amount of $640.00 under the judgment of divorce. Paul testified that Eileen failed to pay the bills and that he was forced to pay the amounts due after the oil company and doctor sued him. The circuit court subsequently ruled that Paul was not in contempt of court because he had complied in good faith with the court order obligating him to pay child support. The circuit court further ruled that it could not grant credit against the child support arrearage because under sec. 767.32(1m), Stats., "the court is no longer given the power to cancel arrearage."

Paul appealed to the court of appeals, which reversed. The court of appeals implicitly held that sec. 767.32(1m), Stats., applied retroactively and construed the statute in light of the facts of the case. The court observed that sec. 767.32(1m) provides that the circuit court may not revise the amount of child support ordered prior to the time that notice of an action to revise support is given to the custodial parent. The court of appeals concluded, however, that the statute "only prohibits the court from revising the amount of child support, it does not prevent the trial court from giving credit against support arrearage." *Piaskoski,* 151 Wis. 2d at 555. The court of appeals held that the circuit court erred when it failed to grant Paul credit for amounts which he paid on behalf of Tom and Eileen during 1987. *Id.*

Eileen petitioned this court for review of the decision of the court of appeals, which we granted.

### IV. *In re the Marriage of Harms*

On August 10, 1978, Mary Carol Harms and David Harms filed a petition for divorce. The petition alleged that two children had been born to the marriage: Abbey (born December 5, 1971) and Devin (born March 4, 1974). The circuit court granted the divorce by judgment entered May 1, 1979, *nunc pro tunc* March 26, 1979. The judgment provided that Mary Carol was to have physical custody of the couple's two minor children and that David was to pay child support in the amount of $300.00 per month. The judgment further provided that David was to have visitation of the children at all reasonable times upon twenty-four hours' advance notice and visitation for a continuous two-week period during the summer. The judgment finally provided that Mary Carol was not to move the children's residence more than fifty

miles from Powers Lake, Wisconsin, without written agreement of the parties or court order.

In August of 1980, Mary Carol and the children moved to Florida without the knowledge or consent of David and without order of the court. On August 24, 1980, Mary Carol wrote to David to inform him of the move, and stated in the letter:

> I do not expect you to pay child support or hospital insurance anymore. Maybe you could use some of the money to come here and visit the children. You averaged seeing them three days a month at home. Maybe you could manage that with us being here.

David ceased making regular child support payments after he received the letter.

The record indicates that David visited his children in Florida in February of 1983 and that he paid the air fare for his children to visit him in Wisconsin for two weeks during the summers of 1983 and 1985 and for four weeks in 1984. The record further indicates that David paid $6,245.00 for the children's private school tuition from 1983 through 1986. In 1985, Mary Carol wrote a letter to David concerning the tuition payments, and stated in the letter:

> The total tuition costs, bus fees and registration costs total 2325.00 . . .. St. Martha's is not open in August until the 26th, [at] that time they want the payment for the first two months . . .. Before Abbey and Devin go up north this summer, I want a post dated check for Sept. 1st, or they are not going, I can not aford [sic] late payments in this coming year . . ..

On October 15, 1987, Mary Carol filed a motion with the circuit court, requesting the court to hold David in contempt for his failure to pay child support as ordered in the judgment of divorce. Mary Carol's affida-

vit in support of the motion stated that David was in arrears in his child support payments in the amount of $25,200.00. The circuit court heard the motion on December 14, 1987. At the hearing, David argued that he should be given credit against the support arrearage for amounts which he paid for his children's private school tuition from 1983 to 1986. David contended that he made the tuition payments because Mary Carol threatened to keep his children from visiting him if he did not make the payments. David further contended that he made the tuition payments with Mary Carol's express or implied consent. David also argued that the support arrearage should be reduced by the amount of the travel expenses which he was forced to incur in visiting his children after Mary Carol moved them to Florida, contrary to the judgment of divorce.

At the conclusion of the hearing, the court found David in contempt of court for nonpayment of child support and required David to resume making child support payments as a purge condition. The court requested that the parties file briefs on the issue of whether sec. 767.32(1m), Stats., permitted the court to grant credits against the support arrearage. In a memorandum decision filed on April 11, 1988, the circuit court found that David made the tuition payments voluntarily and that those payments were not credited as support payments because they were not sent through the clerk of courts. The circuit court ruled that sec. 767.32(1m), Stats., prohibited the court from retroactively granting credit against the support arrearage for the amount of the tuition payments. The circuit court also ruled that the expenses which David incurred in visiting his children "appear[ed] to be for himself or his new family or [are] uncreditable under sec. 767.32(1m)." Accordingly, the circuit court entered judgment finding David in con-

tempt of court on May 26, 1988, *nunc pro tunc* December 14, 1987.

David appealed from the judgment of the circuit court. The court of appeals certified the case to this court. We granted the certification request and accepted jurisdiction of the appeal.

## INTRODUCTION

Section 767.32(1), Stats., is the statutory provision which authorizes the circuit court to revise or modify the amount of support due under an order or judgment providing for child support. Section 767.32(1) states in relevant part:

> After a judgment providing for child support under s. 767.25 . . . the court may, from time to time, on the petition, motion or order to show cause of either of the parties . . . revise and alter such judgment respecting the amount of . . . child support and the payment thereof . . ..

For many years, this court interpreted sec. 767.32(1), Stats., as allowing the circuit court to revise or modify an order or judgment for child support either prospectively or retrospectively. The circuit court could, in its discretion, increase or reduce the amount of child support to be paid by the noncustodial parent in the future upon a showing that there had been a substantial or material change in the circumstances of the parties or children. *See Poehnelt v. Poehnelt,* 94 Wis. 2d 640, 648–49, 289 N.W.2d 296 (1980); *Miller v. Miller,* 67 Wis. 2d 435, 442–43, 227 N.W.2d 626 (1975). In addition, the circuit court could, in its discretion, retroactively modify, reduce, or eliminate a child support arrearage which had accumulated pursuant to an order or judgment for support upon a showing of cause or justification. *See*

*Anderson v. Anderson,* 82 Wis. 2d 115, 119, 261 N.W.2d 817 (1978); *Rust v. Rust,* 47 Wis. 2d 565, 570, 177 N.W.2d 888 (1970). *See also O'Brien v. Freiley,* 130 Wis. 2d 174, 179, 387 N.W.2d 85 (Ct. App. 1986); *Monson v. Monson,* 85 Wis. 2d 794, 803, 271 N.W.2d 137 (Ct. App. 1978).

However, the circuit court had no authority to make an order directing a retroactive increase in support payments. *See Foregger v. Foregger,* 40 Wis. 2d 632, 644–45, 162 N.W.2d 553, 164 N.W.2d 226 (1968); *Marriage of Greenwood v. Greenwood,* 129 Wis. 2d 388, 391, 385 N.W.2d 213 (Ct. App. 1986); *Whitwam v. Whitwam,* 87 Wis. 2d 22, 30, 273 N.W.2d 366 (Ct. App. 1978). And, as a general rule, the circuit court had no discretion to grant credit against support arrearages for gifts or other voluntary expenditures for the child which were not made in the manner specifically prescribed by the order or judgment for support. *Hirschfield v. Hirschfield,* 118 Wis. 2d 468, 470-71, 347 N.W.2d 627 (Ct. App. 1984).

In 1987, the Governor's Welfare Reform Commission recommended that the state enact legislation to implement a new federal mandate contained in 42 U.S.C. sec. 666(a)(9)(C). *See Report on Recommendations of the Governor's Welfare Reform Commission,* at 13 (1987). 42 U.S.C. sec. 666(a)(9)(C) required the states which allowed retroactive modification of child support arrearages to enact legislation to prohibit such modification by May 31, 1987, to remain eligible for federal funding in providing child support enforcement services under Part D of Title IV of the Social Security Act (codified at 42 U.S.C. sec. 651 *et seq.*).[2] The Wisconsin

---

[2]Part D of Title IV of the Social Security Act (codified at 42 U.S.C. sec. 651 *et seq.)* establishes a federal-state scheme for the establishment and enforcement of child support. If a state wishes to receive federal funds in providing child support enforcement

legislature responded to the recommendation by enacting 1987 Wis. Act 27, sec. 2135i, which created sec. 767.32(1m), Stats. Section 767.32(1m) became effective on August 1, 1987, and restricted the scope of sec. 767.32(1) to allow only prospective modifications of child support orders. Section 767.32(1m) states in relevant part:

> In an action under [sec. 767.32] sub. (1) to revise a judgment providing for child support . . . the court may not revise the amount of child support . . . due prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

■

Section 767.32(1m), Stats., provides that the circuit court may not revise the amount of child support due under an order or judgment for support prior to the date that notice of a petition to revise support is given to the custodial parent.[3] In the instant cases, none of the par-

---

services, it must develop and implement a program which complies with the requirements of federal law. In particular, the state must have in effect laws requiring the use of all procedures for the improvement of child support enforcement effectiveness described in 42 U.S.C. sec. 666. *See* 42 U.S.C. sec. 654(20)(a). On October 21, 1986, Congress enacted the Budget Reconciliation Act, Pub. L. No. 99–509 sec. 9103, which amended sec. 466(a) of the Social Security Act by adding a new paragraph, codified as 42 U.S.C. sec. 666(a)(9). *See States Slow to Comply with IV-D Ban on Retroactive Modification of Arrears,* 13 Fam. L. Rep. (BNA), at 1270 (4–7–87). 42 U.S.C. sec. 666(a)(9)(C) requires the states to enact legislation to prohibit the retroactive modification of child support orders to maintain a conforming child support enforcement program.

[3]For a discussion of sec. 767.32(1m), Stats., *see* Comment, *An Unfortunate Change of Circumstances: Wisconsin Prohibits*

ents obligated to pay support dispute the fact that sec. 767.32(1m) eliminated the long-standing power of the Wisconsin courts to modify, reduce, or forgive accumulated support arrearages. Instead, the question in controversy is whether the legislature intended the prohibition against retrospective modification contained in sec. 767.32(1m) to apply retroactively to orders or judgments for support entered prior to August 1, 1987, the statute's effective date.[4] The question of whether the legislature intended sec. 767.32(1m) to apply retroactively is a question of law. *Chappy v. LIRC,* 136 Wis. 2d 172, 180, 401 N.W.2d 568 (1987). This court decides questions of law independently and without deference to the decisions of the lower courts. *Id.*

## RETROACTIVE APPLICATION OF THE STATUTE

*Retroactive Revision of Child Support Orders,* 1988 Wis. L. Rev. 1123.

[4]Paul Piaskoski also disputes the scope of the prohibition contained in sec. 767.32(1m), Stats. He argues that there is a distinction between modifying support arrearages to effect a retroactive decrease in the amount or level of support originally ordered and granting equitable credits against those arrearages to reflect support payments made in some manner other than through the clerk of courts. Paul maintains that only the former practice retroactively revises the amount of support due under an order or judgment for child support and, consequently, is the only practice which sec. 767.32(1m) proscribes. Because we conclude that the statute has prospective application only and that the instant cases are governed by the law in effect in this state prior to the effective date of the statute, we do not reach Paul's argument.

 As a general rule, legislation is presumed to apply prospectively unless the statutory language reveals, by express language or necessary implication, an intent that it apply retroactively. *Chappy,* 136 Wis. 2d at 180. This court has recently stated that the presumption against retroactive legislation has its basis in the characteristics of legislation and concepts of justice. *See Employers Insurance v. Smith,* 154 Wis. 2d 199, 453 N.W.2d 856 (1990). Strong common-law tradition defines the legislature's primary function as declaring law to regulate future behavior. Thus, as a matter of justice, no law should be enforced before people can learn of its existence and conduct themselves accordingly. In short, retroactivity disturbs the stability of past transactions. *See id.*

In the instant cases, the custodial parents recognize this general rule. They argue, however, that the rule against retroactive legislation does not apply when a statute is remedial or procedural, rather than substantive, in nature. The contention is that sec. 767.32(1m), Stats., is a remedial or procedural law because it prescribes the procedure that the circuit court is to follow in revising an order or judgment for child support. The custodial parents maintain that, because sec. 767.32(1m) is remedial or procedural in nature, it is to have retroactive application unless there is a clearly expressed legislative intent to the contrary or unless retroactive application would disturb contracts or vested rights. We are unpersuaded that the statute can be defined as merely procedural.

 A remedial or procedural law prescribes the method to be used in enforcing a right or remedy, while a substantive law creates, defines, or regulates rights or obli-

gations. *See City of Madison v. Town of Madison*, 127 Wis. 2d 96, 102, 377 N.W.2d 221 (Ct. App. 1985). Prior to the enactment of sec. 767.32(1m), Stats., a child support obligor had a long-standing and well-established right to petition a Wisconsin court for retroactive modification of the amount of child support due under an order or judgment for support. The circuit courts had discretion to modify, reduce, or eliminate accumulated child support arrearages when the parent obligated to pay support was able to demonstrate sufficient cause or justification for the reduction. Section 767.32(1m) eliminated a child support obligor's right to petition for retroactive modification of support and thereby redefined his or her obligation with respect to accumulated support arrearages. We do not believe that such a substantial change in the legal rights and obligations of a child support obligor can be so lightly characterized as merely remedial or procedural in nature. We therefore conclude that sec. 767.32(1m) is a substantive law.

We now turn to the question of whether the presumption in favor of prospective application has been expressly or impliedly overcome by the language or history of sec. 767.32(1m), Stats. We find nothing in the language of the statute itself or in its legislative history which indicates that the legislature intended the prohibition contained in sec. 767.32(1m) to reach back to orders or judgments for support entered prior to the effective date of the statute. Therefore, we conclude that sec. 767.32(1m) applies prospectively only and that child support arrearages which accrue, or have accrued, pursuant to an order or judgment for support entered prior to August 1, 1987, may be reduced or eliminated in accordance with the legal principles applicable to the reduction of support arrearages prior to the effective date of

the statute. A discussion of those principles and the manner in which they apply in the instant cases follows.

## REDUCTION OF SUPPORT ARREARAGES UNDER PRIOR LAW

### A. *Abuse of Discretion*

Roger Ystad, Donald Thompkins, and David Harms seek reduction of accumulated support arrearages on the common ground that during the period in which the arrearages accrued there had been a change in circumstances which rendered the original level of support ordered unfair. Under the prior law of this state, the circuit court could, in its discretion, reduce or cancel accumulated support arrearages upon a showing of cause or justification. *Rust,* 47 Wis. 2d at 570. A parent obligated to pay support could show cause sufficient to justify reduction of arrearages by demonstrating that there had been a significant change in the financial or other circumstances of the parties or children which rendered the level of child support ordered unfair. *See Miner v. Miner,* 10 Wis. 2d 438, 441–42, 103 N.W.2d 4 (1960); *Rust,* 47 Wis. 2d at 570.

Under prior law, the retroactive modification of child support arrearages was, therefore, a discretionary remedy which aimed to provide a just result in light of all circumstances. *O'Brien,* 130 Wis. 2d at 179. Discretionary determinations of the circuit court will be upheld if they are reasonable conclusions based upon considerations of appropriate law and the facts of record. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). An abuse of discretion will be found if the circuit court has not exercised its discretion or has exercised its discretion on the basis of an error of law or irrelevant or

impermissible factors. *Barstad v. Frazier,* 118 Wis. 2d 549, 554, 348 N.W.2d 479 (1984).

■

In the *Schulz* case, the circuit court held a hearing on a motion to find Roger Ystad in contempt of court for nonpayment of past-due child support. Roger argued in defense to the motion that the child support arrearage should be reduced or eliminated because his former spouse, Julie, was not providing support for his daughters, Lori and Lisa, during the period in which the arrearage accrued. On the basis of the evidence and testimony presented at the hearing, the circuit court found that Julie was not supporting Lori after she moved out of her mother's home in October of 1980. The circuit court further found that Roger was not liable to pay support for Lisa after she turned eighteen and completed her high school course work in January of 1982. Our review of the record satisfies us that the circuit court's factual findings are not clearly erroneous. *See* sec. 805.17, Stats. We are further satisfied that the circuit court applied the appropriate law to these findings and reasonably concluded that the support arrearage should be expunged in light of the equities of the case. We therefore hold that the circuit court properly exercised its discretion in canceling the child support arrearage.

■

In the *Thompkins* case, Donald Thompkins filed a motion to modify a child support arrearage which had accrued pursuant to an order for support. At a hearing on the motion, Donald argued that he had experienced a significant change in financial circumstances during the period in which the arrearage accrued, and, therefore, the arrearage should be reduced retroactively to reflect his reduced ability to pay child support during that period. The circuit court dismissed the motion, reason-

ing that sec. 767.32(1m), Stats., prohibited the court from retroactively modifying child support arrearages. We conclude that the circuit court abused its discretion in failing to apply the appropriate law in this case. Therefore, we remand the case to the circuit court to determine, in its discretion, whether the child support arrearage may be reduced or eliminated under the prior law of this state.

In the *Harms* case, the circuit court held a hearing on a motion to find David Harms in contempt of court for nonpayment of past-due child support. At the hearing, David argued that the support arrearage should be reduced by the amount of the travel expenses which he was forced to incur in visiting his children after his former spouse moved the children to Florida contrary to the terms of the judgment of divorce. The circuit court refused to reduce the support arrearage by the amount of the travel expenses on the alternative grounds that those expenses "appear[ed] to be for [David] or his new family or [are] uncreditable under sec. 767.32(1m), Stats."

Assuming *arguendo* that the circuit court applied the appropriate law in this case, we nevertheless conclude that the court abused its discretion by failing to exercise its discretion on the basis of the undisputed facts of record. The record clearly reveals that David was forced to incur expenses on his own behalf and on behalf of the children of his prior marriage in exercising his visitation rights after his former spouse moved to Florida, contrary to the judgment of divorce. The circuit court may consider extraordinary travel expenses actually incurred by the noncustodial parent in exercising visitation rights in reducing child support payments. *See* sec. 767.25(1m)(em) (effective July 1, 1987); *see also* sec. 767.245(6) (effective prior to July 1, 1987). We remand

the case to the circuit court to reconsider whether the support arrearage may be reduced in light of the relevant facts of record and the applicable law.

### B. *Equitable Credits*

Paul Piaskoski and David Harms seek reduction of accumulated child support arrearages by way of credit for certain payments and expenditures made on behalf of their children or former spouses in a manner other than through the clerk of courts.[5] Prior to the effective date of sec. 767.32(1m), Stats., the general rule in this state was that the circuit court had no discretion to grant credit against support arrearages for gifts or other voluntary expenditures for the child which were not made in the manner specifically prescribed in the order or judgment for support. *See Hirschfield,* 118 Wis. 2d at 470–71. This rule was designed to discourage unilateral modifications of court orders, which tend to interfere with the right and responsibility of the custodial parent to decide how support money should be spent. *Id.*

To date, this court has not had occasion to consider whether special circumstances of an equitable nature might justify departure from the strict application of the general rule in certain cases. However, our court of appeals has noted that some states recognize limited exceptions to the general rule. *See O'Brien,* 130 Wis. 2d

---

[5]David Harms also argues on appeal that his former spouse is equitably estopped from claiming past-due child support because she wrote him a letter on August 24, 1980, and stated that she no longer expected him to pay child support. Our review of the record reveals that David never presented this argument to the circuit court. As a general rule, this court will not consider an argument raised for the first time on appeal. *See Brooks v. Hayes,* 133 Wis. 2d 228, 241, 395 N.W.2d 167 (1986). We see no reason to depart from the general rule in this case.

at 182. Likewise, our own review of the relevant case law reveals that many jurisdictions recognize exceptions to the general rule in those situations in which the noncustodial parent makes direct expenditures for the support of a child under compulsion of circumstances or when those expenditures are made with the express or implied consent of the custodial parent to accept such alternative form of payment.[6]

Initially, we stress that the proper method for the payment of child support is in the manner prescribed in the order or judgment providing for support. It is only by payment through the clerk of courts that the parent obligated to pay support can ensure that he or she will receive credit for payments or expenditures made for the support of a child. However, we cannot close our eyes to reality. Situations are prone to arise where strict appli-

---

[6]*In re Marriage of Good,* 213 Mont. 269, 273, 691 P.2d 1337, 1340 (1984); *Guri v. Guri,* 122 N.H. 552, 556, 448 A.2d 370, 372 (1982); *McNeal v. Robinson,* 628 P.2d 358, 359-60 (Okla. 1981); *Eagen and Eagen,* 52 Or. App. 299, 303-04, 628 P.2d 428, 430-31 (1981); *Schafer v. Schafer,* 95 Wash. 2d 78, 81-82, 621 P.2d 721, 723-24 (1980); *Gardner v. Perry,* 405 A.2d 721, 723-24 (Me. 1979); *Goodson v. Goodson,* 32 N.C. App. 76, 81, 231 S.E.2d 178, 182 (1977); *Daniel v. Daniel,* 239 Ga. 466, 468-69, 238 S.E.2d 108, 110 (1977); *White v. White,* 34 Md. App. 635, 637-38, 368 A.2d 1061, 1062-63 (1977); *Ediger v. Ediger,* 206 Kan. 447, 452-54, 479 P.2d 823, 827-28 (1971); *Tescher v. Tescher,* 491 P.2d 82, 84 (Colo. Ct. App. 1971); *Cole v. Cole,* 101 Ariz. 382, 384, 420 P.2d 167, 169 (1966); *Headley v. Headley,* 277 Ala. 464, 468-69, 172 So. 2d 29, 32-33 (1964); *Stemme v. Stemme,* 351 S.W.2d 823, 825 (Mo. Ct. App. 1961); *Jackson v. Jackson,* 306 Ky. 715, 717, 209 S.W.2d 79, 80 (1948). *See also* Annotation, *Right to Credit on Accrued Support Payments for Time Child Is in Father's Custody or for Other Voluntary Expenditures,* 47 A.L.R.3d 1031 (1973); 24 Am. Jur. 2d *Divorce and Separation* sec. 1077 (1983).

cation of the general rule would result in manifest inequity to the parent obligated to pay support and unjust enrichment of the parent receiving support. We therefore feel compelled to follow the lead of other jurisdictions and allow credit for direct expenditures made for a child by the parent obligated to pay support either under compulsion of circumstances or with the express or implied consent of the custodial parent.

We have faith that the circuit courts will allow credit against support arrearages only in those situations in which manifest injustice would result if credit were not allowed. However, we deem it essential to clarify the burden of proof which a parent obligated to pay support must satisfy when seeking equitable credit against support arrearages. Whether the obligated parent seeks credit against the support arrearages for direct expenditures made under compulsion of circumstances or with express or implied consent of the custodial parent, the burden of proof is the same. The parent obligated to pay support must prove by clear and convincing evidence that the direct expenditures were made in substantial compliance with the spirit and intent of the order or judgment for support; that the custodial parent either expressly or impliedly consented that the expenditures would serve as an alternative to the parent's obligation to pay child support; and that the credit would not do an injustice to either the custodial parent or the child.

Turning to the facts of the instant cases, Paul Piaskoski seeks credit against a child support arrearage for expenditures which he made directly for his son's support while his son was living with him during an extended period in 1987. Paul also seeks credit for amounts he paid on a heating bill and on a medical bill

604

which were assigned to his former spouse under the judgment of divorce. The circuit court concluded that sec. 767.32(1m), Stats., prohibited it from granting credit against the arrearage and, therefore, failed to make findings of fact which would allow this court to decide whether Paul made the expenditures at issue under compulsion of circumstances or with the express or implied consent of his former spouse. We therefore remand the case to the circuit court to determine whether Paul is entitled to the credit he seeks under the principles set forth in this decision.

David Harms seeks credit against a child support arrearage for amounts which he paid for his children's private school tuition from 1983 through 1986. David argues that he made the tuition payments because his former spouse threatened to keep his children from visiting him if he did not make the payments. David also argues that he made the payments with the express or implied consent of his former spouse. The circuit court noted that the only reason that the tuition payments were not credited as support was because they were not sent through the clerk of courts. The circuit court concluded that sec. 767.32(1m), Stats., prohibited the court from retroactively granting credit against the support arrearage for the amount of the tuition payments. The circuit court made no findings of fact which would allow this court to determine whether David paid the tuition under compulsion of circumstances or with the express or implied consent of his former spouse. On remand, we direct the circuit court to determine whether David is entitled to the credit he seeks under the principles set forth in this decision.

*By the Court.*—The decision of the court of appeals in *In re the Marriage of Schulz v. Ystad* (No.

88–2018–FT) is reversed; the order of the circuit court is affirmed.

The decision of the court of appeals in *In re the Marriage of Thompkins* (No. 88–0952) is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

The decision of the court of appeals in *In re the Marriage of Piaskoski* (No. 88–1631) is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

The judgment of the circuit court in *In re the Marriage of Harms* (No. 88–1594) is vacated, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

DAY, J. (dissenting). Section 767.32(1m), Stats., in my opinion is remedial and procedural and was intended to be retroactive. The idea that a non-custodial parent (overwhelmingly fathers) who fails to pay child support pursuant to a judgment or order entered before enactment of sec. 767.32(1m), Stats., somehow has a protected "right" to gamble that when he's finally tagged some judge will grant him a reprieve makes support law a sort of sporting lottery. Any of the fathers involved in any of these cases could have come into court in the first instance and sought modification of existing support orders.

Courts have been notorious in the past for their "understanding" of non-paying fathers and have too often left the mothers or the taxpayers to pick up the cost of supporting their children. It was this laxity that forced Congress to step in and require the states to at least give some certainty to collecting support by making the non-custodial parent—overwhelmingly men as these

cases before us demonstrate—to come into court and seek future modification of existing support orders.

I think there is an equal protection problem arising from the fact that custodial parents and children who have past due support coming from delinquent non-custodial parents are treated differently. The delinquent payers in the cases arising before passage of the statutes may get their arrearages modified or forgiven entirely to the detriment of custodial parents and children. Those custodial parents whose divorces came after the statute run no such risk.

It's even unfair to the two groups of delinquent, non-custodial parents to treat differently those whose orders were entered before passage of the statute and those whose orders were entered after passage.

All should be treated alike. I therefore dissent.

I would affirm the court of appeals in the *Schulz, Thompkins* and *Piaskoski* cases and affirm the judgment of the circuit court in the *Harms* case.